Henry W. Lengyel, J.
Claimant is a corporation duly organized and doing business under and pursuant to the laws of the State of New York. On August 12,1963, the date on which both of said claims were filed in the Court of Claims and the Department of Law, and on the date of the trial of said claims, the premises known as No. 488 Broadway in the City of Albany, New York, were owned by the claimant herein.
On May 5, 1958, claimant’s predecessor corporation entered into a lease with the State of New York for 41,637 square feet of No. 488 Broadway, to be used for office purposes by the Department of Public Works, for a term beginning the 1st day of June, 1958 and ending the 31st day of May, 1963, at an annual rental of $126,000 to be paid in equal monthly installments. This lease is the subject of Claim No. 42688.
On November 13, 1958, claimant’s predecessor corporation entered into a lease with the State of New York for 4,000 square feet of No. 488 Broadway, to be used for storage and/or reproduction purposes by the Department of Public Works, for a term beginning the 1st day of January, 1959 and ending the 31st day of May, 1963, at an annual rental of $4,000 to be paid in equal monthly installments. This lease is the subject of Claim No. 42687.
The terms of the aforesaid leases were identical except as to the initial dates, space, and rentals which are set forth above. That which is written hereafter applies equally to said leases and the claims herein.
The leased premises were occupied by employees of the Department of Public Works office of the State Architect until on or about February 18,1963 when said State employees moved to Building No. 4, State Campus, Washington Avenue, Albany, New York. The leased premises at that time were vacated by the office of the State Architect. Claimant had oral notice of the intended move early in January, 1963.
Prior to vacating said premises and occupying Building No. 4, the Department of Public Works submitted in September, 1962, its proposed departmental budget, including a request for funds to cover the No. 488 Broadway leases, to the State Director of the Budget for the fiscal year commencing April 1, 1963. However, when the budget was finally submitted to the Legislature, the appropriation requested to pay for the leased space in No. 488 Broadway, Albany, New York, had been eliminated by the Director of the Budget. Therefore, when the budget was subsequently approved by the Legislature on March 29, 1963, no moneys were appropriated to pay the rentals at 488 Broadway. However, the Legislature did appropriate by chapter 202 of the Laws of 1963 *720 effective March 29, 1963, the sum of $3,031,175, to the use of the office of General Services. This appropriation included $305,017 for payment by the State of New York to State Employees’ Retirement System the moneys due for the fiscal year April 1, 3963-March 31, 1964, on the lease-purchase of Building No. 4, State Campus, pursuant to the agreements set forth and contained in Exhibits “5”, ‘ ‘ 6A ’ ’, “ 6B ”, and “60”.
On or about May 23, 1963, the claimant received two letters, Exhibits “4” and “12”, from the office of General Services advising it that its leases were ‘ ‘ cancelled, in accordance with the provisions of paragraph III thereof, effective March 31, 1963.” Paragraph III of both leases was the so-called “ executory clause ”, which is required in all leases executed pursuant to subdivision 2 of section 161-a of the State Finance Law. It reads in part as follows: “ the contract of the state hereunder shall be deemed executory only to the extent of the moneys available to the Commissioner of Standards and Purchase for the leasing of the said premises and that no liability shall be incurred by the State beyond the moneys available for such purpose ”.
The State takes the position that as the Legislature did not appropriate moneys to pay the rent reserved in said leases there were no ‘ ‘ available moneys ’ ’ and that under said ‘ ‘ executory clause ’ ’ the leases were properly and necessarily cancelled. In its memorandum of law, the State argued that ‘ ‘ the Legislature eliminated the item (for rental) in the 1963-1964 Budget for Public Works.”; and, that “ This is precisely the purpose for which the State Finance 161-a(2) was enacted — to cover situations where the legislators, in their infinite wisdom, fail to provide funds to meet existing obligations.” This argument presupposes an affirmative act by the Legislature, with knowledge of the situation, and such was not the fact. The elimination of the rentals requested by the Department of Public Works was accomplished by the Director of the Budget and the Legislature undoubtedly knew nothing of said leases when it voted on and approved said budget. In other words, the Legislature did not affirmatively and specifically act to refuse to appropriate moneys for the specific leases in question. If it had done so, and if claimant had been properly notified prior to April 1, 1963 that the leases were cancelled under the available money requirement of the executory clause, there would not have been any basis for the claims herein. However, as it was an executive determination to delete the requested rental from the budget prior to its submission to the Legislature and as the State Office of Architecture did not go out of existence but merely shifted for the State’s convenience from claimant’s building to the Campus *721 Site, the claimant’s trial counsel was able to reasonably argue that what had transpired came under the law established by Drislane v. State of New York (7 A D 2d 141) and that the “ executory clause ” could not be evoked by the State.
The Drislane decision and Starling Realty Corp. v. State of New York (286 N. Y. 272) are the only reported decisions interpreting the effect of said “ executory clause
The Starling case involved the Division of Placement and Unemployment Insurance which occupied leased offices in several communities in the State of New York. The programs being administered by this State agency were under the budgetary control of the Social Security Board, a'Federal agency. Funds for administration were provided by the Federal Government upon submission of a budget request from the State agency. It became necessary, pursuant to a directive of the Social Security Board, to discontinue several of the smaller offices operated by said State agency. In good faith the State agency decided to close the office at Ossining and to continue the office at Tarrytown. Accordingly, funds for the Ossining office were not included in the budget request for the coming fiscal year, and that lease was terminated. It should perhaps be noted here that the termination of the lease was given in writing on June 29, 1938 effective July 31,1938; whereas, in the subject claims, the formal written notice terminating the lease was given on or about May 23, 1963 effective March 31, 1963. Under the facts of the Starling case the Court of Appeals held that the State was not liable beyond the time for which funds had been appropriated. The court stated at pages 277 and 278 as follows: “ The insertion in the lease of the foregoing provision which, in unmistakable terms, conditions the State’s liability, was in accord with the requirement of a declared public policy. (Public Buildings Law [Cons. Law, ch. 44], § 3, subd. 6.) We may not ignore the limitations by which the Legislature has thus restricted the expenditure of public moneys. ‘ They are wise and should be enforced. The State has chosen to enact something similar to the Statute of Frauds for its own protection. Those dealing with it do so knowing this fact and at their own risk. * * * However inequitable the conduct of the state may be it has said that it shall only be responsible upon one condition. * * * ’ (Belmar Contracting Co. v. State of New York, [Andrews, J.], 233 N. Y. 189, 194.). In the present case inequity may have resulted to the claimant but here again we must ‘ give effect to the settled rule that contracts are made in submission to existing legislation. ’ (People ex rel. City of New York v. Nixon, 229 N. Y. 356, 361.) In this instance the claimant was made aware, both *722 by its implied knowledge of the law and by an express provision in the lease itself, that the liability of the State for rent reserved for the full term was conditional.” The court rejected the argument that money was not ‘available ’ ’ since not requested. It went on to interpret that term as used in the ‘ ‘ executory clause ’ ’ at page 278 of said decision as follows: “ We interpret the word ‘ available ’ as used in the lease as meaning available in the course of ordinary budgetary procedure. This implies a request made by the responsible head of a department for those items only which are necessary to a proper and efficient administration of the department, and the approval of those items by the final budgetary authority. * * * Even if it be assumed that the item, if requested, would have been approved — a conclusion for which there is no basis in the evidence — it could hardly be said that funds not necessary to a proper and efficient administration of the department would be 1 money available for such purposes ’ within the language chosen by the Legislature and employed in paragraph seventeen of the lease. ’ ’
The Brisbane case involved the consolidation of employees of the Division of Placement and Unemployment Insurance from several privately owned buildings in the City of Albany into one privately owned building in the City of Albany. The Federal Bureau of Employment Security, which held budgetary control over the payment of said rentals, ruled that funds could not be used to pay rentals on the several privately owned buildings after removal and consolidation into one building. Funds were made available, however, to pay the rent on the building into which the agency had consolidated its various offices. The court stated at page 142 that: ‘ ‘ The State’s contention that no moneys were ‘ available ’ for payment of further rental is negated by the conceded facts that funds continued to be received for rental of premises leased for the use of the Division and that from those funds the State actually paid rental for space in the new building occupied by the very units which had removed from claimants’ premises. The person in charge of budgetary and finance matters in the Division testified that had the State continued to occupy claimants’ premises the rental would have been paid. It is clear that the State’s removal was for its own convenience and not because funds were unavailable.” (Emphasis added.)
The facts in the claim herein jibe squarely with the facts in the Brisbane case, except that here we have a removal from private buildings to a publicly owned building. See Glassman v. Glassman (309 N. Y. 436) wherein it was stated at page 440 that ‘ ‘ Little argument is required to demonstrate that the Betirement *723 System is the kind of state instrumentality that is clothed with the sovereign immunity of the state.” However, the State argued that neither the Starling nor Drislcme eases was controlling of the fact situation in these claims. The Assistant Attorney-General stated in his brief that: “ It must be noted, however, that each of the above fact situations and opinions (i.e., Starling and Drislane were dealing with the legal effect of the executory clause as it related to an administrative determination. The instant claims involve the legal effect of the executory clause as it relates to a legislative determination. This fact is what distinguishes and sets apart these claims from the above-cited cases. This fact is what, in effect, makes this issue of law one of first impression.” As previously stated if there had been a legislative determination I would agree with the State’s position. According to Webster’s Third New International Dictionary, Unabridged, one of the definitions of the word determine is “to settle or decide by choice of alternatives or possibilities ”. It was an executive determination, thus an administrative choice or determination, not to include a rental request for 488 Broadway leases in the budget submitted to the Legislature. Therefore, the Legislature never had an opportunity to make a determination of the course to be followed. It is my opinion that the Legislature intended the “ executory clause ” to be utilized as a shield against the imprudent use of taxpayer dollars. However, here the State is attempting to use it as a sword to divorce the State for its own convenience from a contract fairly entered into and honestly performed. It should be noted that if the State had not agreed to delete the unilateral cancellation clause contained in its form lease it would have found it unnecessary to assume the strained legal posture it has presented to this court.
I agree with the legal position set forth in 1964 Atty. Gen. 33, 35, wherein it was stated: “ The only difference between the instant case and Drislane is the circumstance that, in the instant case, the offices will be moved to state-owned premises instead of rented space. This difference may not be regarded as sufficient to warrant a conclusion other than was reached by the Courts in Drislane.”
Even if I had decided that the “ executory clause ” was a bar to these claims, I would have held that the claimant herein was entitled to the rent to May 31, 1963, which coincided with the termination dates of the two leases, Exhibits “ 3 ” and “ 11 ”. Both leases provided that the leased premises were to be used by the Department of Public Works “ or by such other department, commission, board or officers of the State of New York *724 as may be entitled by law to use same or to which the premises shall be allotted by such Commissioner of Standards and Purchase as provided by Section 161-a of the State Finance Law.” As previously stated, written notice of the cancellation was not mailed by the State until May 23, 1963. Thus, under the aforesaid clause, the State could have legitimately moved another agency into these premises. The claimant was not free to re-rent said premises until formal written notice of the cancellation was received. Under those circumstances the State would certainly be liable for the rent reserved in the said leases.
The State’s motion to dismiss these claims, upon which I reserved decision, is denied.
Claimant, in Claim No. 42687, is awarded the sum of $666.67 with interest from May 1, 1963 and the sum of $666.67 with interest from June 1, 1963.
Claimant, in Claim No. 42688, is awarded the sum of $10,500 with interest from May 1, 1963 and the sum of $10,500 with interest from June 1, 1963.
The interest dates in both of the above awards shall run until the date of entry of judgment herein.