OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
In an action seeking to recover damages for the alleged breach of two highway construction contracts, the parties have moved for partial summary judgment. (CPLR 3212, subd [e].) The claimant has moved in the alternative for an immediate trial to resolve any issue of fact that is found to exist. (CPLR 3212, subd [c].)
Both contracts[1] relate to the construction of a portion of Interstate Route 88. The entire project was to have been *436 90% Federally funded, but due to the alleged failure to file an environmental impact statement required by the National Environmental Policy Act (see US Code, tit 42, § 4321 et seq.; hereinafter NEPA), a Federal action had been instituted to permanently enjoin work on the project. Pending the outcome of that action, a preliminary injunction was granted on November 14,1973. The latter prohibited the State’s receipt and disbursement of Federal funds for the project, but did not restrain further construction. The State suspended work on December 27, 1973 and unilaterally terminated the subject contracts by deleting the remaining work on March 11,1974.[2] Despite the termination, the project was not abandoned. After the preliminary injunction was vacated, the State relet the work that remained under the former contracts. Construction was completed by another firm, using Federal moneys that had theretofore been approved. Thereafter, these actions were instituted.
The State seeks to avoid liability by raising two defenses. The first is that its right to delete the remaining work was expressly reserved by the “Alterations and Omissions” clause set forth in the subject contracts. The second is founded upon the contracts’ executory clause which, it is claimed, was triggered by the unavailability of funds to complete the project.
The papers on these motions reveal that the parties have engaged in extensive discovery. The transcripts of the various witnesses examined, together with more than 100 exhibits, have been submitted on this application. The parties have agreed that in the event that the evidence submitted is found to raise triable issues of fact, which ordinarily would be sufficient to defeat the motions for summary judgment (see Phillips v Kantor & Co., 31 NY2d 307; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439; Exchange Leasing Corp. v Bundy, 29 AD2d 828; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.12), the court may resolve such issues without setting the matter down for an immediate trial (CPLR 3212, subd [c]) and without the necessity of a formal hearing.
*437 With respect to the first defense, any attempt by the State to justify its actions on the basis of the “Alterations and Omissions” clause is not warranted. The State’s orders on contract, which deleted substantial and material portions of the work contracted for, had the effect of altering the essential identity and main purpose of the contracts. Such a use is not authorized, since the purpose of the clause is to provide a mechanism by which minor changes could be effected without violating competitive bidding statutes. (Del Balso Constr. Corp. v City of New York, 278 NY 154; McMaster v State of New York, 108 NY 542; Elia Bldg. Co. vNew York State Urban Dev. Corp., 54 AD2d 337; Trimpoli v State of New York, 20 AD2d 933.) Hence, this defense must be rejected as a matter of law.
Turning to the second defense, the State asserts that it was excused from performing the remainder of the contracts, suggesting that once Federal funds had been cut off, State moneys were likewise unavailable. This, it contends, rendered performance impossible and triggered the contracts’ executory clause.[3] Such a clause, limiting the State’s liability to the extent that funds are available, is commonplace amongst State contracts and is rooted in statute. (See State Finance Law, §§ 41, 136, 161-a, subd 2; see, also, 1923 Opns Atty Gen 204, 209; 1912 Opns Atty Gen 545.) It is intended to be utilized as a shield against the imprudent use of taxpayers’ dollars and not as a sword to divorce the State,, for purposes of its own convenience, from a contract fairly entered into and honestly performed. (Adson Inds. v State of New York, 51 Misc 2d 718, 723, affd 28 AD2d 1183.) An executory clause will be enforced only where it is established that in the course of ordinary budgetary .procedures[4] funds were not available *438 [5] (Starling Realty Corp. v State of New York, 286 NY 272), and that such unavailability was not the result of any improper act or omission by the State. (Amies v Wesnofske, 255 NY 156; Cameron-Hawn Realty Co. v City of Albany, 207 NY 377; 5 Williston, Contracts [3d ed], § 677; New York Contracts Law, § 1304.)
In the present case, a review of the papers discloses that ordinary budgetary procedures were followed with regard to the funding of the subject contracts. In 1972, the State Legislature appropriated $253.3 million for the construction, and reconstruction of interstate highways. (L 1972, ch 34, § 5.) Of this sum, $214.2 million represented the Federal share and were advanced in anticipation of Federal reimbursement. Thereafter, the Federal Highway Administration (hereinafter referred to as FHWA) approved the contract work and the State Director of the Budget filed with the State Comptroller the requisite certificate of approval of availability. (State Finance Law, § 93, subd 3.) This encumbered the funds that had been appropriated to the extent of the moneys necessary to complete the contract work. Specific account numbers were assigned to each account and as work progressed, moneys were withdrawn from the accounts. On the date the State terminated the contracts, there were in each account sufficient moneys to pay for the remaining contract work.[6] Such first instance funds could be used, however, only if Federal moneys were or could reasonably be expected to be available. (Highway Law, § 80.)
Before addressing the question of the effect of the preliminary injunction on the availability of State first instance funds, consideration must be given to the possible use of State funds, other than first instance funds. In this regard, a procedure existed whereby the State could trans *439 fer unrestricted funds between projects. (State Finance Law, § 93, subd 4.) Although such funds did not fall expressly within the sweep of the preliminary injunction, their use would arguably be restricted pending the resolution of the environmental problem. The contract work was an integral part of an over-all interstate plan that was Federal in scope. As such, any attempt by the State to circumvent the requirement of filing an environmental impact statement by segmenting the over-all project and allowing construction to continue by using solely State funds would most likely not have been permitted. (See Daly v Volpe, 514 F2d 1106; Named Individual Members of San Antonio Conservation Soc. v Texas Highway Dept., 496 F2d 1017, cert den 420 US 926; Indian Lookout Alliance v Volpe, 484 F2d 11.)
With respect to the State’s first instance funds, there is no doubt that the preliminary injunction interrupted their immediate use and justified a suspension of the contract work. It cannot be said, however, that the effect of the preliminary injunction was to make such funds unavailable so as to warrant a termination of the contracts. The latter would necessarily depend on the issuance of a permanent injunction, a possibility that was foreclosed by the State’s premature termination of the contracts. Until such time, the Federal commitment,[7] which was considered a contractual obligation (US Code, tit 23, § 106; Lathan v Brinegar, 506 F2d 677), remained. It was not rendered void ab initio by a bare showing that NEPA had been violated. (Weinberger v Romero-Barcelo, 456 US 305; Sierra Club v Hennessy, 695 F2d 643 [No. 82-6175, Dec. 6, 1982, 2d Cir, Meskill, J.].) Since ordinary budgetary procedures had been followed and moneys had been earmarked for the project, we find as a matter of law that there were funds available on the date of termination to complete the contracts and, hence, the executory clause is not a viable defense.
Even had we concluded that a preliminary injunction and a permanent injunction were to be accorded the same effect, the executory clause could not be asserted as a *440 defense. There is sufficient proof to support a finding that the State’s own acts or omissions contributed to the obtaining of the preliminary injunction. In this regard, as early as nine months prior to the letting of these contracts, the State knew or should have known that the projects were not processed in compliance with NEPA and the Federal Aid Highway Act. Five months prior to the letting of the contracts, the State was put on express notice of this fact by the Capitol Region Citizens Committee. It was this committee that commenced the Federal action which resulted in the issuance of the preliminary injunction. Notwithstanding the aforesaid, both the State and the FHWA ignored the pending lawsuit and continued to process both contracts to PSE approval and ultimate letting, with no attempt whatsoever to comply with NEPA. This “Alice in Wonderland” approach evinced a total disregard of the consequences that were certain to flow once the contracts were let and construction had commenced.
In passing, we note that the same result would have been reached had we been urged to excuse the State’s default on the ground of impossibility of performance. Under this theory, a party restrained by judicial order will not be excused for the performance if the party contributed to the issuance of the order. (Studio 54 Disco v Pee Dee Jay Amusement Corp., 81 AD2d 911; 18 Williston, Contracts [3d ed], § 1939, p 49; Restatement, Contracts, §§ 457, 458; 10 NY Jur, Contracts, § 373, p 362.) In the present case, we have found that the conduct of the State led to the issuance of the preliminary injunction. Moreover, the injunction was temporary and it cannot be said that such suspension or interference was so far material and substantial that the State ought in justice and of right to be held discharged of its obligation. (See Schoelkopf v Moerlbach Brewing Co., 184 NYS 267, affd 198 App Div 965.)
Finally, any suggestion that the State’s performance of the contracts should be excused on the grounds that its decision to delete the remaining work was immune from review must be rejected. At the time, the State was acting in its proprietary capacity, not in its governmental capacity, and must perform its contractual obligations in the *441 same manner as any individual or corporation. (McMaster v State of New York, 108 NY 542, 555, supra.)
Accordingly, the State’s motion for partial summary judgment is denied, and the claimant’s motion for partial summary judgment is granted to the extent that the defenses predicated on the contracts’ “Executory Clause” and the “Alterations and Omissions” clause are stricken as insufficient, and that an interlocutory judgment in favor of the claimant against the State on the issue of liability is to be entered.

. FISH 72-1, D58247, PIN 9357.00: Advertised, July 5, 1972; PSE approval by the Federal Highway Administration, July 5, 1972; Let, Aug. 10, 1972; Attorney General approval, Aug. 31, 1982; Comptroller approval, Sept. 6, 1972; Final estimate, Feb. 18, 1976; Amount of contract: $15,681,570.30.
FISH 72-2, D58553, PIN 9357.01: Advertised, Aug. 16, 1972; PSE approval, Aug. 16, 1972; Let, Sept. 21, Í972; Attorney General approval, Oct. 6, 1972; Comptroller approval, Oct. 16, 1972; Final estimate, Sept. 17, 1975; Amount of contract: $12,834,000.

. At that time, contract No. FISH 72-1 was 50% completed and contract No. FISH 72-2 was 36% completed.

. “The Contractor specifically agrees that the contract shall be deemed executory only to the extent of the moneys available, and no liability shall be incurred by the State beyond the monies available for the purpose.” (Standard Public Works Specifications, Jan. 2,1962, p 10.) Parenthetically, it is noted that the State did not raise such a defense in claims that had been previously brought on behalf of the claimant’s subcontractors. (See Harrison & Burrowes v State of New York, 87 Misc 2d 637.)

. In this regard, it need not be established that there were no funds at all which could theoretically be used. Such an interpretation would render the executory clause meaningless, since the State is never without some funds.

. The word “available” has been interpreted as meaning available in the course of ordinary budgetary procedures and implies a request made by the responsible head of the department only for those items which are necessary to the proper and efficient administration of the department and the approval of those items by the final budgetary authority. (Starling Realty Corp. v State of New York, 286 NY 272, 278.)

. The funds remained in the accounts for over a year following the State’s termination of the contracts, at which time the unexpended balance remaining in each account was drawn down to zero. (FISH 72-1 [Jan. 19, 1975]; FISH 72-2 [Aug. 22, 1975].)

. This commitment became binding as of the date of PSE approval by the FHWA.