Albert A. Blinder, J.
This is an application for permission to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act, as amended by chapter 280 of the Laws of 1976.
Movants were tenants in common of a parcel of land, a portion of which was appropriated by the State of New York for the construction of the Long Island Expressway. The affidavit supporting the motion indicates that (1) the movants retained one Harold William Harrison, a Judge of the Justice Court of Great Neck, to represent them in connection with the State’s appropriation, in April of 1968; (2) thereafter Harrison closed his law offices and abandoned his files and (3) a receiver was appointed to preserve them by the Second Department’s Joint Grievance Committee. It also indicates that during a period from 1970 to 1974, (1) Harrison was charged by the United States with income tax evasion, (2) was convicted and *455 spent time in jail and (3) not until August of 1974 did he advise the movants to engage other counsel. (A written retainer agreement was entered into on August 30, 1974 by and among movants, movants’ present counsel and Harrison.) When movants’ present counsel undertook the representation they noted in their retainer that the time to file a claim had expired in January, 1974 and that enabling legislation would be required.
It is not disputed that the State of New York, pursuant to section 30 of the Highway Law, filed appropriation maps with reference to movants’ property on April 7, 1970 in the office of the County Clerk of Suffolk County. Thereafter, on June 18, 1970 a copy of the notice of appropriation and the description of the appropriation maps were served on movant Leonard Sessa. On October 28, 1970 copies of the same were served on movant Philip DeFiglia, and on January 14, 1971 on movant I. Edward Sessa, thereby completing personal service on all.
The moving affidavit also indicates that various correspondence was received by the movants pertaining to the appropriation including a letter to DeFiglia, dated September 21, 1970, requesting an appointment to bring the map and notice of appropriation to him at his home or business. The September 21, 1970 letter was turned over to Harrison who on October 9, 1970 replied to the State. Other correspondence included a letter addressed to all the movants advising that copies of the map and description had been filed with the Department of State. This was marked "Rec’d July 16, 1974” by a person or persons unknown and was sent to Harrison.
It is clear that movants entrusted the filing of a claim to their attorney, Harrison. It is also apparent that Harrison neglected to pursue the matter, failing timely to file a claim for the appropriation.
The affidavit states that movants were successful in having enabling legislation introduced and passed in both houses of the Legislature in 1975. The affidavit states, that it was subsequently "pocket vetoed by the Governor.” The court has reviewed a copy of the Governor’s message dated August 5, 1975 which vetoed 18 specific private bills. Movants’ bill was not included therein.
Further research by the court disclosed that movants’ bill was introduced in the Assembly as A-4593. While the bill was indeed passed by the Assembly, it never was voted out of the Senate Finance Committee.
*456 Movants further allege that in the 1976 legislative session a new enabling bill passed the Assembly but was not discharged from the Senate Finance Committee because of the subsequent introduction and passage of the Governor’s proposed legislation which became chapter 280 of the Laws of 1976. No enabling statute has ever passed and none ever became law.
Movants allege that the State has in its possession an appraisal of the portion of the property appropriated in the approximate sum of $67,250 and that discussions with an appraiser of their choice indicate a claim for direct damage alone in excess of $300,000. The proposed claim annexed to the motion papers is for $500,000.
It is further stated that the State of New York having appropriated the property has full knowledge of the essential facts constituting the claim and has had an opportunity to investigate the circumstances underlying it. Movants also allege that the State will not be substantially prejudiced by the filing of the claim and that they have no other available remedy.
THE LAW
Section 10 of the Court of Claims Act sets forth the time for filing claims and notices of intention to file claims. It provides that "[n]o judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim.” Subdivision 1 of section 10 provides: "A claim for the appropriation by the state of lands, or any right, title or interest in or to lands shall be filed within three years after the accrual of such claim, or where title is vested by the filing of a description and map in the office of the county clerk or register, then within three years after personal service of a copy of such description and map and notice of filing thereof or if personal service cannot be made within the state, then within three years after the filing of the description and map and the recording of notice of filing thereof.”
As we stated in Leibowitz v State of New York (82 Misc 2d 424, 427) in discussing the former provision for applications to file late claims: "Section 10 of the Court of Claims Act, provides that the timeliness of filing is a jurisdictional prerequisite to making a claim against the State, De Marco v State of New York (43 AD2d 786); the appellate courts have held that subdivision 5 of section 10 of the Court of Claims Act *457 must be strictly construed. (Bommarito v State of New York, 35 AD2d 458.) The requirements of subdivison 5 of section 10 are conjunctive and therefore, failure to satisfy any one of them is fatal, Turner v State of New York (40 AD2d 923), regardless of whether or not the State will be prejudiced by granting the relief sought. (Society of New York Hosp. v State of New York, 21 AD2d 733.)”
The enactment of chapter 280 of the Laws of 1976 was pursuant to a request by the Governor which was initially stated in his veto message dated August 5, 1975 in the following language: "By disapproving these bills, my chief purpose is to call attention to the need for an amendment to the general laws so that in future private claims bills will no longer be necessary to avoid injustices. I intend to submit at the next legislative session proposed legislation to enable this subject to be handled in the future in a logical, fair and orderly way, in place of the haphazard, careless and discriminating procedure which has been followed up to this time. An overriding concern of this legislation will be to insure to every citizen of this State an equal opportunity to have his claim heard and considered fairly.”
The request was repeated during the 1976 legislative session together with a draft of the proposed legislation. Thereafter the Legislature enacted and the Governor signed chapter 280 of the Laws of 1976 which amended subdivision 6 of section 10 and which provides as follows: "A claimant who fails to file a claim or notice of intention, as provided in the foregoing subdivisions, within the time limited therein for filing the claim or notice of intention, may, nevertheless, in the discretion of the court, be permitted to file such claim at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules. For the purpose of this subdivision, a claim against the state arising under subdivision one of this section shall be deemed an action upon an implied contractual obligation. The application for such permission shall be made returnable at any regular or special session of the court and may be heard and determined by any judge thereof. The claim proposed to be filed, containing all of the information set forth in section eleven of this act, shall accompany such application. In determining whether to permit the filing of a claim pursuant to this subdivision, the court shall consider, among other factors, whether the delay in *458 filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigage the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy.”
As can be seen by a comparison between the old subdivision 5 and the new subdivision 6, the latter provisions for permitting the filing of a late claim are less stringent and accord the court more discretion. The court now is only mandated to consider several enumerated factors before making its determination. It is clear that the factors stated in subdivision 6 need not be conjunctively determined. Unlike the requirement of the old subdivision 5 of section 10, there is no expressed necessity to satisfy every one of the enumerated factors before granting relief.
Movants argue that they have done all that could reasonably be expected of them in their own behalf. They state that they hired an attorney to respond to the legal action long before the appropriation actually took place. We assume this to be true just as we assume that the State had notice of the essential facts, and had an opportunity to investigate the circumstances underlying the claim. Facts stated in a motion for leave to file a late claim against the State are deemed true for purpose of motion, when not denied or contradicted in opposing affidavits. (Hawley v State of New York, 28 Misc 2d 150; Gielski v State of New York, 3 Misc 2d 578.)
It would appear to the court that the claim is substantively meritorious. The Department of Transportation, by letter dated September 21, 1976, acknowledges its policy, with respect to barred claims (as with the one at bar) to be "that the claimant is entitled to receive the amount of the approved Department appraisal covering the claim, plus statutory interest, providing the claimant executes all formal papers which the Attorney General deems necessary to authorize payment and to secure to the State a full release of the claim.”
The respondent argues that movants had three years to file a claim pursuant to subdivision 1 of section 10 as amended by chapter 234 of the Laws of 1971, and that, therefore, the time for the filing of claims expired on June 18, 1973 for Leonard Sessa, October 28, 1973 for Philip DeFiglia and January 14, 1974 for I. Edward Sessa. The respondent’s position is that the *459 new subdivision 6 of section 10 of the Court of Claims Act cannot revive a barred cause of action. It is stated that there is no language or indication in the statute that would require it to be given a retrospective construction, and that, therefore, the statute must be construed prospectively.
The newly enacted subdivision 6 specifically sets forth that the court may exercise its discretion and allow a late claim "at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice laws and rules.” The same subdivision states that for purposes of late claim applications, appropriation claims "shall be deemed an action upon an implied contractual obligation.” Pursuant to CPLR 213 (subd 2) an action upon an implied contractual obligation must be brought within six years.
Movants have relied in this motion to a great extent upon the misfeasance of their attorney. Movants’ counsel argue that an attorney’s personal or professional difficulties should not be permitted to affect his clients’ rights. It is argued that the courts have generally developed the doctrine that a client will be excused where his lawyer’s lapse was caused by such difficulties. For this movants cite Wolf v Associates Discount Corp. (12 AD2d 241). The Wolf case, however, related to a failure to promptly serve an amended complaint and prosecute the action. The First Department stated that (p 242) "[i]n dealing with failure to prosecute an action, the personal or professional difficulties of lawyers for a party are germane to the inquiry.” The doctrine is not as broad as is asserted by movants’ counsel. In fact, pursuant to CPLR 2004, the court may extend the time fixed by any statute except where otherwise expressly proscribed by law. The statute of limitations may not be extended by any court. (CPLR 201.) With respect to defaults, inaction, misfeasance, malpractice or any other activities by attorneys as an excuse to file timely, case law has consistently held that those were not reasonable excuses. In the August 5, 1975 message, the Governor mentioned six private bills which involved "claimants who were represented by attorneys who, for whatever reason failed to file timely claims.” The Governor continued "[t]he Court of Claims, it should be noted, has in the past refused to accept as a 'reasonable excuse’ for the failure to file a timely claim, inadvertence on the part of a claimant’s attorney (see e.g., 500 Eighth Avenue Associates v. State, 30 AD2d 1010).” (Also, see, *460 Fenimore v State of New York, 28 AD2d 626; Hall v State of New York, 28 AD2d 1034; McCabe v State of New York, 58 Misc 2d 823.)
The court, however, should not overlook the ostensible purpose of chapter 280 of the Laws of 1976. The court in applying justice may on some occasions feel impelled to protect clients from their lawyers. The court is no longer mandated to find a "reasonable excuse” before exercising discretion. It now must only consider, among other factors, whether the delay in filing the claim was excusable.
However, before the court can consider exercising its discretion, a paramount issue of statutory construction must be decided. The three-year limitation period on appropriation claims (Court of Claims Act, § 10, subd 1) remains unchanged. The new subdivision 6 extends the time period for an application for the filing of a late claim to six years. The question is whether the movants may take advantage of the extended time period despite the fact that their claims were barred prior to the effective date of chapter 280 of the Laws of 1976?
A similar question was presented in Torsiello v State of New York (70 Misc 2d 294) on motion before Judge Milton Albert. In issue in Torsiello was an amendment of subdivision 10 of section 10 of the Court of Claims Act, pursuant to chapter 234 of the Laws of 1971, extending the limitation period on appropriation claims from two to three years. It was clear in that case that the claim was barred prior to the enactment of the chapter. Judge Albert stated (p 296) "[s]ince the expiration of a time limitation does not have the effect of discharging the obligation but merely of depriving the holder of access to the courts, it has been held that the Legislature has power to extend the period of an existing time limitation and lengthen the time in which suit may be brought in regard to causes of action already existing (Matter of Dee v. State Tax Comm., 257 App. Div. 531).” He then proceeded to review the legislative intent of the enactment, as well as the Governor’s memorandum and found that the statute was entitled to a retroactive construction.[1]
In reviewing the legislative intent of chapter 280 of the *461 Laws of 1976, the court has carefully studied the Governor’s veto message of August 5, 1975 wherein he stated "[I] intend to submit at the next legislative session proposed legislation to enable this subject to be handled in the future in a logical, fair and orderly way, in place of the haphazard, careless and discriminating procedure which has been followed up to this time. An overriding concern of this legislation will be to insure to every citizen of this State an equal opportunity to have his claim heard and considered fairly.” (Emphasis supplied.)
The 1976 memorandum of the State Executive Department in support of the bill which later became chapter 280 of the Laws of 1976, referred to the Governor’s 1975 veto message and stated "[t]he Governor indicated his intention to submit legislation to enable late claims to be handled in the future in a logical, fair and orderly way in place of the haphazard, careless and discriminating procedure which had been followed.” (Emphasis supplied.) (McKinney’s 1976 Session Laws, Legis Mem, p A 275.) On approving chapter 280 the Governor stated by memorandum dated June 8, 1976 "[t]his bill, which is part of my program will enable late claims to be handled in the future in a logical, fair and orderly way.” (Emphasis supplied.) (McKinney’s 1976 Session Laws, Gov Mem, p A 284.)
It should also be noted that chapter 280 of the Laws of 1976, although approved on June 8, 1976 was not effective until September 1, 1976. (Cf. L 1971, ch 234, which was effective "immediately”.)
It is the general rule that amendatory statutes are to be construed as prospective only, unless there is a clear expression of the legislative purpose to justify a retroactive application. (Jacobus v Colgate, 217 NY 235, 240.) It is presumed that the Legislature intended changes in the form of remedies to be applicable to proceedings thereafter to be instituted. (Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 270.) In McKinney’s textual treatise on the construction and legal interpretation of the statutes enacted by the Legislature, it is stated (McKinney’s Cons Laws of NY, Book 1, Statutes, § 51, subd [b]): "Generally, statutes are construed as prospective, unless the language of the statute, either expressly or by necessary implication, requires that it be given a retroactive construction.”
A statute of limitation provides a time period which no court may extend. (CPLR 201.) In referring to the time limita *462 tions set forth in article 2 of the CPLR, CPLR 218 (subd [a]) provides that the article is not to be construed as authorizing any action to be commenced which was barred when the article became effective. This apparently sets forth the general public policy relating to new limitations legislation. The limitations of time for actions against the State of New York are set forth in section 10 of the Court of Claims Act.
Judicial interpretation has generally construed statutes as being prospective. (Cf. Gallewski v Hentz & Co., 276 App Div 219, affd 301 NY 164.) As Judge Cardozo stated in Hopkins v Lincoln Trust Co. (233 NY 213, 215): "Revival [of a barred cause of action] is an extreme exercise of legislative power. The will to work it is not deduced from words of doubtful meaning. Uncertainties are resolved against consequences so drastic.”
The court has carefully reviewed the statute and its legislative intent. It finds that there is no indication that the statute was to be retrospectively applied. Accordingly, it is the court’s determination that the claims by all of the tenants in common are barred and were barred prior to the effective date of chapter 280 of the Laws of 1976.
Even if this court had found by implication, a retrospective construction of chapter 280 of the Laws of 1976, nevertheless, the motion, of necessity, would have to be denied as to Leonard Sessa since more than six years had passed after the accrual of the claim and before the motion was made.
Not having so found, the motion is denied as to all the movants.

. It should be noted that Judge Albert was a member of the Temporary State Commission on Eminent Domain, which had recommended the proposed legislation in its interim 1971 report and which later became chapter 234 of the Laws of 1971. In such capacity he obviously was fully aware of the intent behind the statutory amendment.