Gerard M. Weisberg, J.
This is an application for permission to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act.
The claim is for conscious pain and suffering and wrongful death, arising out of the alleged murder of movant’s decedent, John Flannery, by Kenneth Watson, a former mental patient in various institutions including Bellevue Hospital and Rock-land State Hospital. Liability is predicated on the theory that the State, by its agents, was negligent in releasing and/or permitting the escape of Kenneth Watson, a person known to be dangerous, and that this negligence was the proximate cause of John Flannery’s death.
The facts are that John Flannery was fatally stabbed on August 7, 1975, and his widow appointed administratrix on October 2, 1975. Thereafter, on October 14, 1975 movant, through a firm of attorneys which she had retained, caused to be served a notice of claim upon the City of New York, the Department of Corrections of the City of New York and the New York City Health & Hospitals Corporation. No notice of claim was filed with the State at that time. An action in Supreme Court was subsequently commenced against those defendants, which action is presently pending.
*799 During the course of the Supreme Court action, an order was made directing the defendants to furnish to movant’s then attorneys certain records concerning Kenneth Watson’s hospitalization and confinement. Those records were furnished during the period December, 1976 to January, 1977. Among them was correspondence indicating that Watson had been a patient at Rockland State Hospital in July, 1975, and further indicating that Rockland State Hospital was advised that Watson had previously been diagnosed as a chronic paranoid schizophrenic by Bellevue Psychiatric Hospital.
On July 11, 1977 Mrs. Flannery retained new counsel (her present attorneys), after having been advised that her previous attorneys wished to withdraw from the case. Upon receipt and review of the files, her present attorneys determined that based upon information concerning Rockland State Hospital inter alia, an action should be commenced against the State of New York. Most expeditiously, on July 25, 1977, they moved this court by order to show cause[1] for the relief sought herein.[2]
However, that appears to be the first date upon which the State received any information that any claim was being made against it for the incident which occurred almost two years earlier and more than 18 months after movant had received her appointment as Administratrix.
Subdivision 2 of section 10 of the Court of Claims Act states: "[a] claim by an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, for damages for a wrongful act, neglect or default, on the part of the state, by which the decedent’s death was caused, shall be filed within ninety days after the appointment of such executor or administrator unless the claimant shall within such time file a written notice of intention to file a claim therefor in which event the claim shall be filed within two years after the death of the decedent. In any event such claim shall be filed within two years after the death of the decedent.”
*800 Having failed to comply with these statutory requirements, movant would have this court exercise its discretion in permitting a late filing pursuant to subdivision 6 of section 10 of the Court of Claims Act. This recently amended statute (L 1976, ch 280, eff Sept 1, 1976) provides, in part, as follows: "[i]n determining whether to permit the filing of a claim pursuant to this subdivision, the court shall consider, among other factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy.”
The court is thus required to weigh the factors specifically enumerated in the foregoing section, as well as any others which it deems relevant. The presence or absence of any one of these factors is not necessarily dispositive of the main issue since there is no requirement that each element set forth be satisfied. This represents a departure from prior law. Under the former subdivision 5 of section 10 of the Court of Claims Act, the claimant was required to demonstrate a reasonable excuse for not filing within 90 days; that prior to the expiration of the 90 days after the claim arose, the State had actual knowledge of the essential facts constituting the claim; and that the State was not substantially prejudiced by the delay in filing the claim. These requirements were conjunctive, and the failure to satisfy any one of them was fatal to granting the relief. (De Marco v State of New York, 43 AD2d 786, affd 37 NY2d 735.) By contrast, the present law gives the court the power to exercise its discretion in favor of a claimant notwithstanding a failure to demonstrate compliance with a particular criterion. (Sessa v State of New York, 88 Misc 2d 454, 458.)
The removal of the former restrictions on judicial discretion by the Legislature indicates to this court a strong concern that litigants with meritorious claims be afforded their day in court. The notion that persons injured by the wrongful actions of others should be compensated for their loss is fundamental to our system of jurisprudence. Nevertheless, it is also clear to this court that its discretion in such matters is not totally unfettered. There are equally weighty factors which it must consider in order to do justice between the parties. With these *801 considerations in mind the court will discuss the specific factors enumerated in subdivision 6 of section 10 of the Court of Claims Act seriatim.
First, the delay in filing is not excusable. Movant’s previous attorneys had the same documents concerning Rockland State Hospital upon which movant now seeks relief against the State. Whether the previous attorneys’ failure to file a claim against the State was a result of inadvertence, mistake of law or fact, or error in judgment if error there was, such a failure does not constitute a reasonable excuse. (Matra v State of New York, 52 AD2d 989; Modern Transfer Co. v State of New York, 37 AD2d 756; 500 Eighth Ave. Assoc. v State of New York, 30 AD2d 1010.) Movant seeks to excuse the late filing on the theory that the information concerning Rockland State Hospital is in some sense newly discovered. It is, of course, new material, but only because movant changed her firm of attorneys. While this court agrees with the proposition that "[t]he court in applying justice may on some occasions feel impelled to protect clients from their lawyers” (Sessa v State of New York, 88 Misc 2d 454, 460), we are not persuaded that this case merits such an exercise of our discretion in view of movant’s failure to satisfy this court with respect to the other factors which it must consider under subdivision 6 of section 10 of the Court of Claims Act. Under these circumstances, movant is bound by her former attorneys’ failure to timely file.
It is, however, noteworthy that even under the former rule concerning late filings, this court did sometimes overlook attorney’s inadvertence where it was clear that the State had received adequate notice and opportunity to investigate the claim. Such a case was Pagan v State of New York (31 Misc 2d 235), a wrongful death action in which claimant’s previous attorney had failed to file a claim until he became aware that another attorney had filed three claims arising out of the same automobile accident. The court granted a motion for late filing brought on by claimant’s new attorney, who had filed the other three claims mentioned, saying (p 236): "[although the claimant’s original attorney might have been more diligent in making inquiries which would have revealed the possible liability of the State, nevertheless under the circumstances of this case, the court accepts his excuse as reasonable particularly in view of the abundant knowledge the State has of all the facts, circumstances and persons involved in that *802 tragic accident. (See Farnham v. State of New York, 195 Misc. 380, affd. 277 App. Div. 1015; Matter of Lebensfeld v. State of New York, 14 Misc 2d 936.)”
The court notes these cases to emphasize another serious failure in movant’s application which distinguishes it from the above cases — the failure to give notice to the State of the essential facts constituting the claim. There is not a scintilla of evidence that the State had notice of any facts concerning this claim or the incident involved for almost two years after its occurrence. The presence or absence of such notice is the second factor which the court must consider under subdivision 6 of section 10 of the Court of Claims Act, and it is clear that movant’s application is deficient in this respect as well.
Similarly, the third factor which we must address is the question of the State’s opportunity to investigate the circumstances involving the claim. Much of the investigation would concern an examination of records. As a result of this motion, the State has that opportunity now. However, the Legislature in drafting this statute used the word had, and this court cannot rewrite the language to suit the convenience of a claimant. As Judge Cooke writing for our Court of Appeals recently stated (Rapp v New York City Employees’ Retirement System, 42 NY2d 1, 6): "the matter should be solved by reference to the statutes, regardless of how unappealing the result may be * * * since, 'courts, it is submitted, are not free to devise their own rules in a statutory field merely because their sense of justice impels them’ nor do courts 'sit as councils of revision on the legislative product’ (see Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 436-437, [Breitel, J., dissenting]). We sit in a judicial role and not as legislators (see Montgomery v Daniels, 38 NY2d 41, 68 [Fuchsberg, J., concurring]).”
In view of what was stated with respect to the second factor, it must be found that the State never had an opportunity to investigate the circumstances involving the claim.
The fourth factor to be considered is whether the claim appears to be meritorious. All that is known in this respect is that some time after Kenneth Watson, the alleged murderer, left Bellevue Hospital, he was admitted to Rockland State Hospital and that at some time thereafter Rockland State Hospital learned of his previous diagnosis. How long he was in Rockland State Hospital, for what purpose he was there, when or how he left and whether Rockland State Hospital learned *803 of the previous diagnosis during his stay is unknown. Movant’s attorney states in her affidavit at page 5: "[n]o knowledge of how Kenneth Watson came to Rockland State Psychiatric Center or how he departed from there is in these records, but we do know that a dangerous chronic paranoid schizophrenia [sic] was on Fordham Road on August 7, 1975 and stabbed John Flannery.”
The fact that a particular individual is at some time in a State institution does not ipso facto render the State liable for wrongful actions which he subsequently commits. The only indication in movant’s moving papers of how Watson came to be at large is that he was released on his own recognizance either from criminal court or a Criminal Term of the Supreme Court. No liability attaches to the State for such rulings by judicial officers (Jameison v State of New York, 7 AD2d 944). Moreover, even assuming that Watson was released from Rockland State Hospital based upon the erroneous judgment of a physician, the State would not be liable therefor. (St. George v State of New York, 283 App Div 245, affd 308 NY 681.) In regard to movant’s allegation that Watson may have been negligently allowed to escape, the court notes the decision in Dunn v State of New York (29 NY2d 313) in which the court found no liability because the State’s negligence in allowing the prisoner to escape was nevertheless not the proximate cause of claimant’s injury. This court does not presently purport to decide the merits of the claim before it,which may indeed be meritorious. However, we cannot avoid the conclusion that this particular claim seems speculative to a high degree, both as to the facts and to the law applicable thereto.
Fifth, we must deal with the question of prejudice to the State by the delay in filing. Although some information exists in the records, the investigation necessary to defend this action obviously encompasses much more. Doctors, nurses, attendants and others all must be found and interviewed. These persons may or may not presently be employed by the State of New York or be available to its investigators. As the Attorney-General said in his affidavit in opposition to this motion, it is indeed "a cold trail [that] must be traversed”. The court finds that the failure to timely file resulted in substantial prejudice to the State.
Sixth, the availability of any,other remedy must be considered. Not only is there another remedy available to movant, *804 but she has in fact proceeded in accordance therewith as indicated by the pending action in the Supreme Court.[3] That action is for the same damages arising out of the same occurrence for which movant seeks to file a claim in this court. Additionally, movant may have one or more causes of action against individual employees of Rockland State Hospital, or other State employees, which may be pursued in a forum other than the Court of Claims. As a general rule, officers and employees of the State of New York are not immune from suit for their own tortious conduct, even where such conduct is committed in the course of their employment. (De Vivo v Grosjean, 48 AD2d 158.)
In addition to the six specific factors, the statute requires that the court shall consider "other factors.” In this area it is to be noted that this motion was made within one month following a motion to dismiss the Supreme Court action made by two of the defendants named therein. The present motion therefore appears to be an afterthought. As Judge Rossetti of this court said in Terrell v Green Haven Correctional Facility (Court of Claims, 1977), "[s]uch a strategy may be a practical measure to safeguard claimants’ interests, but we do not consider it a proper basis for the exercise of our discretionary powers.”
For all of the foregoing reasons, the court finds that movant has failed to furnish a sufficient basis for the exercise of this court’s discretion to permit a late filing of her claim.
Accordingly, the motion is denied.

. As originally presented to the Judge of this court who signed the order to show cause, the movant requested two branches of relief. The first was for permission to file a late claim and the second was for an examination before trial. Before signing the order to show cause, that Judge struck the second branch of the relief. Accordingly, this motion was argued and submitted only on the issue as to whether or not this court should permit the late filing of the claim.

. Although the caption of the papers in this court designates the movant as "Plaintiff”, this is an obvious misnomer and she is herein referred to as "Movant”. Furthermore, although numerous parties are designated as "Defendants”, on the oral argument of this motion, counsel withdrew any request for relief against all of them other than the State of New York.

. The court is aware that two of the defendants in that action have moved to dismiss the complaint. At the time of the argument on the instant motion, it was suggested that the motion in this court be adjourned pending a determination of the motion in the Supreme Court or, in the alternative, this court would be constrained to find that for the purpose of this motion that movant had a viable action against all defendants named in the Supreme Court proceedings. Movant’s counsel nevertheless determined that this motion should not be adjourned.