Biodiagnostic Labs, Inc. v State of New York (2023 NY Slip Op 51493(U))

[*1]

Biodiagnostic Labs, Inc. v State of New York

2023 NY Slip Op 51493(U)

Decided on June 26, 2023

Court Of Claims 

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 26, 2023
Court of Claims 

Biodiagnostic Labs, Inc., Movant,

against The State of New York [FN1], 
 Defendant. 

Claim No. XXXXX

FOR MOVANT:
THE BERKMAN LAW OFFICE, LLC
By: Robert J. Tolchin, Esq.
FOR DEFENDANT: 
Letitia James, Attorney General
By: Ellen S. Mendelson, Esq.
Assistant Attorney General

Linda K. Mejias-Glover, J.

Movant, Biodiagnostic Labs, Inc. moves by notice of motion seeking, inter alia, an order granting it to file a late Claim, pursuant to Court of Claims Act §10(6). The motion was fully briefed. The Defendant has opposed the motion, Movant has replied, and Defendant was granted leave by this Court to submit a sur-reply.
Now, having carefully reviewed the papers and exhibits filed, Movant's motion is granted for the reasons more specifically set forth hereinbelow.
FACTUAL BACKGROUND AND POINTS OF COUNSEL
According to Movant's counsel, Movant is a medical testing laboratory that performed medical tests for patience at New York State Veteran's Home at Saint Albans and New York State Veteran's Home at Montrose, which are state owned facilities. According to counsel, invoices were rendered for those services, some were paid, but many remained unpaid. Counsel states that the unpaid amounts are as follows: New York State Veteran's Home at Saint Albans in the amount of $40,106.38; And New York State Veteran's Home at Montrose in the amount of $26,847.15.
Movant's counsel argues that the failure to timely file the claim is excusable because "[t]ypically, the process of submitting medical bills to insurance carriers and waiting for them to be processed, etc. takes more than 6 months, and during that time new bills are being generated and some bills are being paid. It would not be normal at all for a provider to file a claim in the Court of Claims over invoices that are only 6 months old. And the unpaid invoices by themselves are rather small - some less than $100.00 ... It would be odd indeed as a matter of routine business for a medical lab to sue the State in the Court of Claims for an $87 unpaid invoice less than 6 months old. It is much more to be expected that payment would be awaited and billing offices would attempt to sort it out, and nobody would think of filing a claim until thousands of dollars of invoices accumulate. Moreover, during the intervening period we had the entire COVID-19 pandemic and all the disruption of ordinary operations that entailed."
Counsel explains that Defendant had notice of the facts giving rise to this Claim from the earliest possible moment due to the fact that invoices were sent in the usual course of business to the accounts payable office of the care facility involved, followed by periodic statements listing open accounts.
As for whether this is a meritorious claim, counsel states that Movant has records for each test performed and invoices for each. Counsel also argues that the failure to timely serve the claim upon the State has not resulted in substantial prejudice to the State because this claim involves accounting records, to wit: Movant has records of invoices billed and the State has records of invoices paid. Lastly, counsel states that there is no other available remedy available to Movant.
In opposition, counsel argues that Movant has failed to proffer a reasonable excuse for the delay, and the reasons that were proffered can only be described as law office failure, and as such not an acceptable excuse for delay. Counsel argues that Movant has relied solely on counsel's affirmation and has failed to annex an affidavit of someone with personal knowledge concerning the manner in which the Claim accrued, and that such reliance is of no value in determining whether a claim has merit.
Defendant's counsel annexes the affidavit of Dalton Burke, who is the Fiscal Administrator at the St. Albans facility, and has been such since 2009. According to Mr. Burke, "St. Albans entered into an agreement with [Movant] to render services at Saint Albans commencing on or about October 24, 2017. The services were terminated on May 18, 2019, for poor performance Biodiagnostic Labs, Inc. was paid for all services provided for which an invoice was presented to the facility." Mr. Burke further states that the "purported statement of invoices annexed to [Movant's] motion as Exhibit A are not invoices at all, but rather, a compilation of alleged outstanding bills identified by [Movant's] internal invoice numbers. If they were actual invoices they would have the names of the patients, dates of service and a host of other identifying information which this statement lacks." Lastly, Mr. Burke notes that no services were rendered by the Movant subsequent to the date of termination.
Defendant's counsel also annexes the affidavit of Lionell Jackson, who has been employed as the Chief Finance Officer at the Montrose facility since September 2020. Mr. Jackson overseas billing responsibilities related to all vendors and is responsible for issuing payments to vendors as services are rendered. In his affidavit, he states that the Movant "began providing services to the Montrose home on November 14, 2017. The contract was terminated effective May 29, 2018, due to poor performance." He further states in his affidavit that the Movant "received payments for all services provided during the contract dates. There are no outstanding invoices due and owing." Like Mr. Burke, Mr. Jackson also states that "the purported statement of invoices annexed to [Movant's] motion as Exhibit B are not invoices at all, but rather, a compilation of alleged outstanding bills identified by [Movant's] internal invoice numbers. If they were actual invoices they would have the names of the patients, dates of service and a host of other identifying information which this statement lacks and no services were rendered by [Movant] subsequent to the date of their termination."
Both Mr. Burke and Mr. Jackson advise the Court that pursuant to Medicare regulations all invoices must be billed within one (1) year of the date of service in accordance with 42 C.F.R. § 424.44, and that therefore, most, if not all, of the alleged invoices on Movant's statement of services being requested are untimely.
In reply, Movant's counsel submits the affidavit of Movant's Chief Executive Officer, Nathan Sontag. Mr. Sontag acknowledges that the documents annexed to the motion were a summary of the invoices rather than the invoices themselves but explains that this "was done solely in the interests of saving paper as the invoices themselves are voluminous." While Mr. Sontag does not disagree that the State terminated the services of Biodiagnostic Labs, Inc. in 2019, he states that "there were outstanding bills that have never been resolved. These bills were presented to the respective facilities in a timely manner in the ordinary course of business prior to termination. After termination [Movant] forwarded the outstanding bills many times to the two facilities. Additionally, [Movant] hand-delivered the outstanding bills to the administrators of the two facilities on multiple occasions." Mr. Sontag states that Movant made repeated efforts to get paid, but were told repeatedly by accounts payable staff and senior management that "they were working on getting [Movant] paid, and they requested backup documentation," which was hand-delivered. With respect to the delay in filing, Mr. Sontag explains that "[w]hen the COVID-19 Pandemic hit, we understood the pressures that nursing homes were under and we did not expect that any progress would be made towards getting these invoices paid during that period, and we also did not consider that it would have been appropriate to sue them during that time as the health care community, especially nursing homes, was experiencing a very difficult period. However, as the Pandemic waned and there was no progress towards getting any of our open invoices paid, and the statute of limitations was approaching, we made the decision to commence this action." He claims that "[i]t never occurred to us [that] during [that] timeframe before the Pandemic while the administrators of the two facilities were telling us [that] they were working on getting our claims paid we should sue them rather than being patient as they tried to work through the bureaucracy." Mr. Sontag took over handling this matter upon the passing away of his predecessor, Gershon Sontag, in November of 2022. Movant annexes copies of the invoices in question to the reply papers.
Movant's counsel further states, in reply, that the statements made by Mr. Burke and Mr. Jackson indicating that no debts are owing are not dispositive as the statements are general and not addressed to specific invoices at issue. Counsel further argues that Defendant should have [*2]attached a summary spreadsheet showing all invoices and all payments involving [Movant], and that such a spreadsheet could easily be generated by Defendant's accounting software at each facility. With respect to the issue raised by Defendant regarding Medicaid submissions, counsel argues that it is a non-issue since Mr. Sontag affirmed that the invoices were presented contemporaneously to defend it at each facility and were represented multiple times. As to the argument that the failure to timely file is due to law office failure, counsel points out that no one has asserted that a lawyer delayed filing this Claim, but rather Mr. Sontag explained the reasons for the late filing, which had nothing to do with counsel.
In sur-reply, Defendant's counsel argues that the submission of Mr. Sontag's affidavit is improper as it was only submitted for the first time in reply and because in it, Mr. Sontag admits that he does not have personal knowledge of the events in question as he was not Chief Executive Officer at the relevant times. Counsel further argues that the purported invoices which Movant first offered in reply are also improper as a movant is not permitted to introduce new arguments in reply papers. Counsel argues that the affidavits of the two fiscal officers are valid and directly contradict the allegations that there were outstanding invoices at the time of termination of services. As for the argument that Defendant should have to submit copies of the terminated contract to the Court, Defendant's counsel argues that is a "weak attempt to shift the burden of proof." Lastly, counsel argues that Movant has failed to give a valid and reasonable excuse for the delay in filing, because most of the alleged invoices brought forward by Movant would have been untimely even prior to the start of the pandemic.

LAW AND ANALYSIS
The State's Waiver of Immunity Under Section 8 of The Court of Claims Act
The State's waiver of immunity under Section 8 of the Court of Claims Act is conditioned upon movant's compliance with specific conditions to suit set forth in article II, including the time limitations set forth in section 10 (see id.; Alston v State of New York, 97 NY2d 159 [2001]).These requirements must be " 'strictly construed and a failure to comply therewith is a jurisdictional defect compelling the dismissal of the claim' " (Hargrove v State of New York, 138 AD3d 777, 777-778 [2d Dept 2016], quoting Welch v State of New York, 286 AD2d 496, 497-498 [2d Dept 2001]; see Finnerty v New York State Thruway Auth., 75 NY2d 721, 722-723 [1989]).
Court of Claims Act Section 10 (6) grants the Court the discretion to allow the filing of a late claim upon consideration of all relevant factors, including whether Movant's delay was excusable, whether Defendant had timely notice of and the opportunity to investigate the pertinent allegations, whether Defendant would suffer substantial prejudice should the motion be granted, whether the proposed claim has the appearance of merit and whether Movant has an alternate remedy. Additionally, an application pursuant to the statute must be made prior to the expiration of the underlying statute of limitations, and it must be supported by a proposed claim that complies with the pleading requirements of Court of Claims § 11(b). It is "well settled that in deciding whether to grant an application for leave to file a late claim, the presence or absence of any one of these factors is not controlling" (Weaver v State of New York, 112 AD2d 416, 417 [2d Dept 1985]).
Timeliness of the Motion Under Court of Claims Act §10 (6)
The first issue for determination upon a late claim motion is whether the motion was filed [*3]before the expiration of the applicable statute of limitations under CPLR Article 2 (Court of Claims Act § 10 [6]). Here, the relevant statute of limitations for this breach of contract claim is six years (CPLR § 213 [2]).
The Sufficiency of the Proposed Claim Under Court of Claims Act § 11 (b)
"Facts stated in a motion for leave to file a late claim ... are deemed true for purpose of [the] motion, when not denied or contradicted in opposing affidavits" (Sessa v State of New York, 88 Misc 2d 454, 458 [Ct Cl 1976], affd 63 AD2d 334, [3d Dept, 1978], affd 47 NY2d 976 [1979]; see Schweickert v State of New York, 64 AD2d 1026 [4th Dept, 1978]; Cole v State of New York, 64 AD2d 1023 [4th Dept 1978]).
Court of Claims Act § 11 (b) requires that a claim "shall state the time when and place where such claim arose [and] the nature of same." Whether a claim is sufficient under Section 11 (b) is subject to strict scrutiny as sections 10 and 11 of the Court of Claims Act are jurisdictional (see Lepkowski v State of New York, 1 NY3d 201, 207 [2003]; see also Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]) and not waivable.
It is well-established that the failure to satisfy the substantive pleading requirements of Court of Claims Act § 11(b) is a jurisdictional defect that requires dismissal of the claim (see Hargrove v State of New York, 138 AD3d 777 [2d Dept 2016]; Kolnacki v State of New York, 8 NY3d 277, 280-281 [2007]; Lepkowski at 206-207; Czynski v State of New York, 53 AD3d 881, 882-883 [3d Dept 2008], lv denied 11 NY3d 715 [2009]).
Here, the Court finds that the proposed claim satisfies the pleading requirements of Court of Claims Act § 11 (b) for purposes of this motion.
Consideration of the Six Factors Under Court of Claims Act § 10(6)
Whether the Delay in Filing was Excusable
Having considered the explanation set forth by Movant's counsel, the Court finds that the delay in filing excusable. Therefore, the factor weighs in favor of granting the motion.
Whether the Defendant Had Notice and the Opportunity to Investigate, and Whether the Defendant Will Suffer Substantial Prejudice
The next three factors to be addressed - whether the Defendant had notice of the essential facts constituting the claim, whether the Defendant had an opportunity to investigate the circumstances underlying the claim, and whether the failure to file or serve a timely claim or to serve a note of issue resulted in substantial prejudice to the Defendant - are interrelated and will be considered together.
Again, having considered the details and nature of the Proposed Claim, the Court finds that Defendant was not substantially prejudiced in having an opportunity to investigate the Proposed Claim and therefore, the factors weigh in favor of granting the motion.
Whether Claimant has Another Available Remedy
The fifth factor to be considered is whether the claimant has another remedy available. It does not appear to be disputed that Movant has no other legal remedy. Accordingly, the Court finds that the factor weighs in favor of granting the motion.
[*4]Whether the Claim has the Appearance of Merit
The sixth and most important factor to be considered is whether the proposed claim has the appearance of merit, as it would be completely futile to permit a defective claim to be filed, subject to dismissal, even if other factors tended to favor the request (see Shah v State of New York, 178 AD3d 871 [2d Dept 2019], lv to app den'd, 35 NY3d 982 [2020]; Savino v State of New York, 199 AD2d 254 [2d Dept 1993]). While this standard clearly places a heavier burden upon a party who has filed late than upon one whose claim is timely, it does not require a claimant to establish definitively the merit of the claim, or overcome all legal objections thereto, in order for the Court to grant a motion for late claim relief (see Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1 [Ct Cl 1977]). A claimant need only establish the appearance of merit; he or she does not need to demonstrate a prima facie case at this stage of the proceedings.
Here, a careful reading of the four corners of the Proposed Claim, along with the exhibits attached thereto, and considering the allegations to be true for purposes of this motion, the Court finds the proposed claim has the appearance of merit. Accordingly, this factor weighs in favor of granting the motion.
Therefore, based on the foregoing, the motion is granted.

DECISION
Accordingly, and based upon the foregoing, it is hereby
ORDERED, that M-98861, seeking leave to file a late claim is GRANTED; and it is further
ORDERED, that Movant is directed to file and serve a claim in the same form as the Proposed Claim (Movant's Exhibit "C"), together with the appropriate filing fee and in accordance with the requirements of sections 11 and 11-a of the Court of Claims Act, no later than forty-five (45) days after the date of filing of this Decision and Order.
Dated: June 26, 2023
New York, New York
_______________________________
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims
Papers Read on this Motion:
1. Notice of Motion, Affirmation in Support, Exhibits
2. Affirmation in Opposition, Affidavits, Exhibits
3. Affirmation in Reply
4. Affirmation in Sur-Reply

Footnotes

Footnote 1: The Court of Claims is a court of limited jurisdiction insofar as its reach extends only to New York State and certain public authorities as defendants (see Court of Claims Act § 9; Kevin A. Reilly, Practice Commentaries, McKinney's Cons Laws of NY; NY Const, art VI, § 9). Accordingly, the caption is amended sua sponte to reflect the only properly named defendant, the State of New York.