Milton R. Psaty et al., Copartners Doing Business as Greater New York Waterproofing Company, Appellants, v. Perry B. Duryea, as Commissioner of Conservation of the State of New York, et al., Respondents.

Argued January 15, 1954; decided March 12, 1954.

*George M. Simon* and *Homer E. Peters* for appellants. I. Only the Supreme Court has jurisdiction of the cause of action. (*Samuel Adler, Inc.*, v. *Noyes*, 285 N. Y. 34; *Breen* v. *Mortgage Comm.*, 285 N. Y. 425; *Levine* v. *Parsons*, 258 App. Div. 1003, 282 N. Y. 808; *Ferend Co.* v. *State of New York*, 251 App. Div. 13, 277 N. Y. 593; *Abner M. Harper, Inc.*, v. *City of Newburgh*, 159 App. Div. 695, 222 N. Y. 670; *Martins & Co.* v. *City of Syracuse*, 183 App. Div. 622; *Moffett, Hodgkins & Clarke Co.* v. *Rochester*, 178 U. S. 373.)

*Nathaniel L. Goldstein, Attorney-General* (*John F. Hmiel, Wendell P. Brown* and *Thomas Burke* of counsel), for respondents. I. The complaint against State officials in their official capacity only, acting within their authority and not as individuals charged with any illegal acts against plaintiffs, fails to state a cause of action. The action is against the State itself and cannot be maintained without its consent. (*Breen* v. *Mortgage Comm.*, 285 N. Y. 425; *Saranac Land & Timber Co.* v. *Roberts*, 195 N. Y. 303; *Sanders* v. *Saxton*, 182 N. Y. 477; *Niagara Falls Power Co.* v. *White*, 292 N. Y. 472; *Samuel Adler, Inc.*, v. *Noyes*, 285 N. Y. 34; *Levine* v. *Parsons*, 259 App. Div. 771; *Ferend Co.* v. *State of New York*, 251 App. Div. 13.) II. The acts of the State officers who opened the bids, accepted plaintiffs' bid, reviewed their claims and thereupon declared default of plaintiffs and directed the Comptroller to retain their

bid deposit, are judicial acts within their power and cannot be reviewed in this action. (*Osterhoudt* v. *Rigney,* 98 N. Y. 222.) III. The powers and duties of the State Comptroller, in reference to payment of moneys of the State or of moneys under its control, or the refund of any money paid to the State, are governed by law, are judicial in nature and cannot be reviewed in this action. (*O'Donoghue* v. *Boies,* 159 N. Y. 87; *People ex rel. Schick* v. *Marvin,* 271 N. Y. 219.) IV. Even if the court had had jurisdiction, it was bound as a matter of law, under the facts in this case, to dismiss the complaint.

DESMOND, J. Plaintiffs are building contractors who, having put in a bid to erect a building for the State, and having discovered, after the several competitive bids had been opened and theirs found to be the lowest, that they had made a serious omission in calculation of the amount of their bid, informed officials in the State Department of Public Works of the alleged error and requested that they (plaintiffs) be relieved of their bid because of the mistake, and that their bid check of $7,500 be returned. After conferences, the State officials refused to accede to this request. Plaintiffs then brought this action in the Supreme Court. In form, it runs, not against the State itself, but against various State officers. The complaint says that the defendant State officers have declared that the bid check, which is on deposit in a special fund of the State, will be declared forfeit and placed in the State's general fund, that this will result in great and irreparable loss and damage, and that plaintiffs have no adequate remedy at law. The prayer for judgment is that the allegedly mistaken bid of plaintiffs be rescinded and cancelled, and that defendants be enjoined from declaring the plaintiffs in default or from transferring the bid check or declaring it forfeit, or from using the check in any way, or placing it in the State's general fund, and for a direction that the bid check or its proceeds be returned to plaintiffs. The answer denies the allegations as to mistake by plaintiffs, and sets up an alleged separate defense to the effect that the State notified plaintiffs that theirs was the lowest bid and that it was accepted and the contract awarded to plaintiffs, that the contract documents were delivered to plaintiffs for execution by them, that plaintiffs refused to sign on account of the alleged

mistake, that several hearings or conferences were held between plaintiffs and State officers or their representatives, and that plaintiffs submitted certain working papers in an effort to prove they had made the mistake but that the papers did not support that claim, whereupon the State officials, on several occasions, repeated their demands that plaintiffs execute the contract, but that plaintiffs have continued to refuse to do so with the result that, on September 20, 1950, which was about three months after plaintiffs originally filed their bid and bid check, and nearly two months after plaintiffs were notified that their bid was accepted, the State, through its representatives, notified plaintiffs that their deposit of $7,500 was forfeited to the State. The answer contains a further allegation, not now particularly important, that the State, by reason of the default of plaintiffs, was compelled to award the contract to the bidder next higher than plaintiffs, which bid was higher by about $20,000 than the bid of plaintiffs.

At the trial, as by an earlier separate motion, the State continued to insist that the Supreme Court had no jurisdiction, besides asserting that no mistake had in fact been made by plaintiffs. Both those questions were decided in favor of plaintiffs. The Official Referee held that plaintiffs' bid was mistakenly computed and was not plaintiffs' real bid or one which they had ever intended to submit, and ordered that the bid be rescinded and cancelled, and that the defendant State officers be restrained from using the check in any manner, and that they return the check or its proceeds to plaintiffs, with the bid itself. While the Appellate Division reversed on the law and dismissed the complaint, its order specifically affirmed the facts as found by the Referee. Since that fact finding of a mistake, affirmed in the Appellate Division, was justified on this record, there is no question before us as to whether or not the mistake actually was made. The real question is one of jurisdiction of the Supreme Court to grant the demanded relief.

It seems to be conceded that the Court of Claims has, under section 9 of the Court of Claims Act, no jurisdiction to grant strictly equitable relief, but to award money damages only against the State, in appropriate cases. Plaintiffs assert that they, accordingly, could not have obtained relief against the State in the Court of Claims on this claim, since they would

have no rights unless and until their bid should be cancelled and rescinded, and that the Court of Claims, being without such equity jurisdiction, could not annul the bid. Therefore, say plaintiffs, they were compelled to bring this suit in equity in the Supreme Court to be relieved from their bid, to have the same declared cancelled, and for an injunction to keep the State officials from putting the money into the State's general funds. Such would be a proper subject for the exercise of the equitable jurisdiction of the Supreme Court were it not for the fact that defendants are sued as officers of the State, dealing, within their powers, with moneys paid to the State, and that, accordingly, this is a suit against the State under the theory of *Samuel Adler, Inc.,* v. *Noyes* (285 N. Y. 34), *Breen* v. *Mortgage Comm. of State of N. Y.* (285 N. Y. 425), and *Niagara Falls Power Co.* v. *White* (292 N. Y. 472). Since, therefore, it is such a suit against the State itself, the Appellate Division was correct in its unanimous dismissal of the suit on the jurisdictional ground since, concededly, the State has not given consent so to be sued. In the Presiding Justice's opinion for the unanimous Appellate Division, it is stated that the broad grant of power given to the Court of Claims in sections 8, 9 and 12 of the Court of Claims Act " necessarily implies the right to afford equitable relief where the same may be incidental to a claim for a money judgment ". (282 App. Div. 94, 99.) We need not determine the full reach of that statement of law, since appellants' contentions are defeated by the fact that this is a suit against the State itself attempted to be brought in the Supreme Court and, as such, subject to dismissal. We may assume that, in determining claims for money damages against the State, the Court of Claims may apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief, but that concept has nothing to do with this case since this, in essence and by concession, is not a suit for money damages but, primarily, an equitable action to cancel and rescind a bid which equitable relief, as plaintiffs concede, was essential before there could be any injunction or mandate for the return of the money. In other words, this was a suit for traditional equitable relief, with the return of the money to follow as a consequence of the equitable relief, if granted.

The Official Referee, in his opinion, said that the facts here were such as should, under equitable considerations, entitle the plaintiffs to relief. He pointed out, too, that the State has largely waived its ancient immunity as a sovereign. As to whether the State has waived that immunity so as to permit the prosecution of this suit in the Supreme Court, the only authority cited by the Official Referee was *Levine* v. *Parsons* (258 App. Div. 1003), as to which leave to appeal was denied by this court in 1940 (282 N. Y. 808). It cannot be denied that the *Levine* decision, resulting in the same kind of relief asked by plaintiffs herein, would seem to hold inferentially that there is jurisdiction in the Supreme Court of such a suit against a State officer; however, the jurisdictional point was not raised in *Levine,* and it is raised in the present case. We note too (as decided by this same Appellate Division in 1937 and cited by that Appellate Division in its *Levine* case memo) *Ferend Co.* v. *State of New York* (251 App. Div. 13) which was the same sort of suit as the present one, brought against the State in the Court of Claims, and resulting in a judgment in favor of the claimant against the State, which was reversed by the Appellate Division. The Appellate Division's reversal in the *Ferend* case was " on the law ", and its opinion stated (p. 15) that, while a court of equity could relieve a petitioner who has made an unintentional mistake in the bid before acceptance " the rule of equity in the above cases cannot help the claimant in this case ". We take that (and this court's no opinion affirmance, 277 N. Y. 593) to mean that the claimant Ferend could not, on the law, get his money back because in the Court of Claims he could not get the equitable relief of cancellation of the bid.

Referring to section 879 of the Civil Practice Act, which says that where a duty is imposed by statute on a State official an injunction to restrain him from the performance of that duty can be granted only by the Supreme Court at a term held in the department where the officer performs his duties, the Appellate Division opinion correctly ruled that this statute does not grant any authority not elsewhere found, for injunctions against State officers, but is a merely limiting statute providing that such injunctions, if granted, must be by the Supreme Court sitting in the department where the public office or officer is officially located.

In *Niagara Falls Power Co.* v. *White* (292 N. Y. 472, *supra*), we pointed out that while State officials can be hₑₗ individually to account for unlawful trespass on a plaintiff's property or rights, a suit is actually one against the State when public officers are sued because they are going ahead with the performance of duties mandated by State statutes (see *Erie R. R. Co.* v. *Sells,* 298 N. Y. 58). That applies to this case.

The State here calls our attention to section 1 of article V of the State Constitution, as amended in 1938, which says that the refund of any money paid to the State, except upon order by the Comptroller, is void. The same idea is carried into sections 111 and 140 of the State Finance Law. Section 111 says that no money in any fund, title to which is in the State, shall be refunded except upon audit of the Comptroller. Section 140 says that whenever a deposit of money is required in connection with a bid, the bid may be withdrawn if no award of the contract is made within forty-five days after the receipt of bids, and that, upon such withdrawal, a bidder's deposit shall be returned to him. Section 140, however, goes on to say that any bid money required by statute shall be retained under the jurisdiction of the Comptroller until returned or forfeited, which language makes it clear to us that this bid money was State money even though kept, pursuant to section 8 of the Public Buildings Law, with the bid money of the two next lowest bidders in a separate fund. Those changes in the statutes were, plainly, for the purpose of seeing to it that bid moneys are treated as State moneys, not kept lying around in various departments. Reading these various statutes together makes it plain that these bid moneys are in the possession of the State itself, with the result that a judgment commanding their return would be a judgment against the State itself.

Quite possibly, our affirmance means that these plaintiffs, and others in like position, have no cause of action anywhere to get their money back. This, however, does not mean that an assertion by a bidder that he has made a mistake is to get no hearing at all. Conferences were held in this matter, and the State officials decided not to credit plaintiffs' assertions or to exercise the power that apparently was theirs under subdivision 4 of section 8 of the Public Buildings Law to reject any or all proposals, and to advertise again for proposals. We need not

here decide whether a determination by State officials against such a claim of mistake by a bidder can be reviewed in a proceeding under article 78 of the Civil Practice Act. No such question is before us. Our conclusion is that, when these State officials, in this particular instance, listened to the demand of plaintiffs but refused to set aside the bids, they were acting not as individuals but officially as State officers, and that any suit to compel them to change that determination and to cancel the bid and return the money was necessarily a suit against the State itself which could not be brought, as this suit was attempted to be brought, in the Supreme Court.

*Samuel Adler, Inc.,* v. *Noyes* (285 N. Y. 34, *supra*), is the most recent case which involves an effort by a citizen to get back money deposited with the State for a special purpose. Plaintiff Adler had applied to the State Commissioner of Agriculture and Markets for a milk dealer's license and had tendered the amount required as the fee, but the commissioner, although denying the license, refused to return the fee, apparently because there was no statute specifically providing for such return. The money was held with other similar license fees in a single fund under the control of the commissioner. Adler sued in the County Court for the return of his money and got judgment below, but the judgment was reversed here on the ground that any duty to make reimbursement was a duty of the State and any claim against the State therefor must be prosecuted in the Court of Claims. Adler's claim arose in 1937 before the passage of the statutes referred to in the second paragraph above herein but, significantly, those statutes were noticed in this court's opinion, written after those statutes had come into effect, as follows: " Any duty to make such reimbursement was a duty of the State. The Legislature has now made this plain. (See L. 1940, ch. 178.) " (285 N. Y. 36–37.)

The judgment should be affirmed, with costs.

LEWIS, Ch. J., CONWAY, DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; VAN VOORHIS, J., concurs in the result upon the ground that the State of New York is the real party in interest, and that the State has not been joined as a party defendant.

Judgment affirmed, etc.