Adolph C. Oblando, J.
The claimants have moved for an order directing the State to pay interest on the entire advance payment of $43,600 from June 28, 1968, the date on which the State stopped paying interest, to March 17, 1969, the date payment was made; and for a further order directing the State to pay the claimants interest on the balance of the award from March 3, 1972, the date the State stopped paying interest, to July 11, 1972, the date payment was actually made.
A decision of Judge Modugno of the Court of Claims, filed January 19, 1972, after trial, awarded the claimants the sum of $99,800, with interest from April 5,1968. In his decision Judge Modugno dealt with the question of interest as follows: “ This Court has at least twice before held that the State’s use of the statutory suspensions of interest as a lever to force a claimant to either do what he is not legally obligated to do (obtain releases from the lessees) or to accept less than the 75% provided by statute is patently unconstitutional.”
The court cited the decision of Court of Claims Judge Lengyel in Bobwin Real Estate Corp. v. State of New York (Claim No. 47781, decision filed Oct. 17, 1969) as follows: “These provisions in the partial payment agreement are obviously not in compliance with the statutory power conferred upon the Superintendent of Public Works (Commissioner of Transportation). The statute §30 (13) clearly and cogently provides that the Superintendent shall offer to the owner of a claim 75% of an amount determined by the Superintendent to be the value of that claim and not 75% of the value of all claims arising from the appropriation. The practical effect of this erroneous application of §30 (13) is to transfer the burden of obtaining the disposition of fixture and/or leasehold claims from the State to the fee owner. We do not believe the Legislature intended, by its enactment of §30 (13), to authorize the Superintendent of Public Works to make fee owners the unwilling agents of the State in obtaining such releases. We do not find the agreement of partial payment to be an enforceable contract. In the first instance, the fee owner is not a free and unfettered signatory to said contract. He is the modern counterpart of the *933 seafarer who attempted to steer a course between Scylla and Charybdis. If he refuses to sign the contract, he is faced with a suspension of interest after the mandated 90 day period. If he signs the contract and cannot obtain the required tenant leasehold and/or fixture general releases, he is faced with a suspension of interest after the 30 day period. In the second instance, the State does not have the statutory authority to offer a fee owner 75% of the value of all claims arising out of an appropriation;” (In accord Valle v. State of New York, Claim No. 48928, Motion No. M-13751, decision filed Dec. 15, 1971.)
Judgment, in accordance with the decision, was entered February 29, 1972. The Attorney-General issued a certificate of no appeal from this judgment March 3, 1972.
The answering affidavit of the Assistant Attorney-General states: ‘ ‘ This Court is now a constitutional Court but with the jurisdiction as limited by the Court of Claims Act. The Court does not have equity jurisdiction nor does it have the power to direct that an act be done by the Comptroller of the State of New York except that provided for in Section 22 of the Court of Claims Act. The issuance by this Court of an order directing the Comptroller to pay would be tantamount to an order of mandamus and it is respectfully submitted that this Court does not have the power of mandamus included in its jurisdiction.”
The same affidavit advises: “if the claimants, the judgment creditors, are entitled to any additional funds as a result of this said judgment the same should be claimed against the Comptroller in an Article 78 proceeding in the Albany County Supreme Court.”
The Assistant Attorney-General’s challenge to the court’s authority to require compliance with its final, unappealed judgment rests on a sterile cliche that “ The Court does not have equity jurisdiction ”.
If the Court of Claims cannot require a compliance with its final, unappealed judgments and such compliance must be sought in another forum, it will cease to be a court and will become instead an advisory body whose effectiveness depends upon persuasion and the good humor of litigants.
The challenge of the Assistant Attorney-General rests on a threefold error: he counsels disobedience of the court’s final, unappealed judgment; he usurps the function of the Appellate Division by reversing or modifying a valid judgment of this court; and he advises the claimants to seek the compliance of a State official by an article 78 proceeding in the Supreme Court of Albany County.
*934 The Court of Claims has constitutional and statutory authority to try and determine .suits against the State. Its judgments are final and binding, insofar as anything governmental is final and binding,, unless an appeal to the Appellate Division or Court of Appeals by either or both parties results in a reversal or modification of the judgment. No constitutional or statutory provision requires or permits the Supreme Court to decide whether a final judgment of the Court of Claims is legally sound or factually correct, whether it should be honored or ignored by either party.
The Court of Claims has comprehensive jurisdiction to try and decide all claims against the State of New York including the right to afford equitable relief where it may be incidental to a claim for a money judgment (Psaty v. Duryea, 282 App. Div. 94 [1953], affd. 306 N. Y. 413). The rule is both logical and statutory. (Court of Claims Act, §§ 8, 9, 12.) A court whose final, unappealed judgment can be ignored with impunity by counsel for either party, would be an anomaly. No court can consent to or survive an extralegal nullification of its constitutional and statutory vitality. This court has neither the intention nor the right to resign itself to such a terminal predicament.
Motion granted.