William L. Fobd, J.
Upon the foregoing papers, this motion by the State University for dismissal is granted only as to the second cause of action, and is denied as to the first cause of action and the claimant’s cross motion for summary judgment on the first cause of action is granted.
This claim was filed on May 25, 1972 containing two causes of action arising out of an agreement of lease between the claimant and the State University of New York (SUNY), pursuant to which SUNY occupied office space at 30 Bussell Boad in the City of Albany.
The first cause of action alleges damages of $16,245.58, with interest, representing unpaid rent for half of the month of March and all of April 1972, which period remained on said lease, after the defendant moved out of claimant’s premises.
On the claimant’s cross motion for summary judgment on this first cause of action, the State concedes liability but contends that interest should not be payable because claimant was offered payment of the principal rent due by a third party, Capitol Hill Twin Towers Corporation, which had contracted with defendant to pay same, and contends further that claimant ignored or refused said offer.
The second cause of action alleges damages of $757,867.50 representing, compensation for the alleged breach of a contract obligating defendant to continue the use and occupancy of certain quarters at 30 Bussell Boad for a five-year period commencing June 1,1972. The alleged breach is predicated upon a letter (Exhibit B), dated August 26, 1971, from Baymond W. Kettler, Vice Chancellor for Finance, Management and Business of SUNY to James F. Sowalsky, president of claimant, who signed the same letter indicating a mutual understanding and agreement to the terms and conditions set forth in said letter. To the claimant this letter is a renewal of the lease and thus a new five-year lease. To the defendant it is an offer of terms looking toward a new lease and is unenforceable because not approved by the State Comptroller pursuant to the requirements of subdivision 2 of section 112 of the State Finance Law.
Claimant in its cross motion for summary judgment on the first cause of action alleges that the total principal amount of *613 rent remaining due on the original lease is $16,245.58 which consists of $5,169 representing rent for the last half of March 1972 and further consists of $11,076.58 representing rent for all of April, 1972. Claimant contends it is entitled to interest on the $5,169 from March 1, 1972 and on the $11,076.58 from April 1, 1972. Defendant concedes that the total principal rent remaining due is $16,245.58 and does not object to claimant having summary judgment in that amount, but does object to paying any interest thereon.
In contending that interest is not payable, the defendant relies upon an offer to pay to claimant the principal rent remaining due which offer was made by the comptroller of Capitol Hill in a letter from him to the claimant, dated August 8, 1972 which was either ignored or rejected. Defendant further relies on an agreement of lease, dated November 26,1971 and particularly paragraph 39 thereof which provided that Capitol Hill would assume the remaining rental obligation of the defendant to claimant to the extent of the remaining rent due from the time that defendant moved out of 30 Bussell Boad to April 30, 1972, the date of the termination of the original lease. Defendant argues that this offer to claimant by Capitol Hill to pay the remaining rent due stopped the running of interest. We do not agree.
Under the lease SUNT extracted a promise from Capitol Hill to discharge SUNY’s liability, if any, for March and April rent to Westgate. This created a third-party creditor beneficiary relationship in favor of Westgate which it could have enforced Against Capitol Hill. (Lawrence v. Fox, 20 N. Y. 268; Strong v. American Fence Constr. Co., 245 N. Y. 48.) However, the right created by the contract does not vest in the third-party creditor beneficiary until he has knowledge of the contract made for his benefit .and consents thereto. The parties to the contract may rescind if as to the third party up to that point in time. (N. Y. Contracts Law, § 1017; Berger & Son Co. v. Duys, 174 Misc. 976, affd. 261 App. Div. 961, mot. for rearg. den. 261 App. Div. 986.)
This court has not been presented, and has not found, any authority to sustain the argument in the factual situation of the instant claim, that the third-party beneficiary Westgate must accept an offer by the promisor Capitol Hill to discharge the debt of the promisee SUNY. While privity may be found to exist here sufficient to allow the enforcement of the promise by Westgate, absent consent by the latter the court holds that it *614 was not legally obliged to accept Capitol Hill’s offer to pay STJNY’s remaining rent dne.
We decide therefore that claimant is entitled to summary judgment against the State on the first cause of action for total principal rent due in the amount of $16,245.58, with interest on the March rent due of $5,169 from March 1, 1972 and with interest on the April rent due of $11,076.58 from April 1,1972.
Claimant’s second cause of action is based upon the August 26,1971 letter (Exhibit B) from the Vice Chancellor for Finance, Management and Business of SUNY to the president of West-gate North, Inc. Claimant has not filed an oposing affidavit to the defendant’s motion to dismiss, but in oral argument and in a memorandum of law makes the following points:
That the August 26 letter constitutes a contract enforceable against entities other than the State and also against the State, absent intervening factors;
That the original lease agreement with rental option was approved by the Comptroller;
That every contract implies good faith and fair dealing between the parties even those to which a State body is a part;
■ That the defendant cannot use section 112 of the State Finance Law as a sword; and
That the State University is not subject to section 112 of the State Finance Law.
On none of the arguments advanced by claimant, or any combination thereof, do we believe that claimant can avoid the explicit and mandatory requirement of subdivision 2 of section 112 of the State Finance Law. At the center of the controversy here is real property, and more particularly the rental thereof to which subdivision 2 of section 112 is directly applicable. The parties hereto do not dispute the fact that the alleged renewal of lease was not approved by the Comptroller of the State and was not filed in his office. Claimant argues that the Comptroller’s approval was unnecessary because he had approved the option in the. original lease which provided for two 1-year renewals at a rent to be agreed upon. The August 26 letter set forth a 5-year lease with a 120-day cancellation clause exercisable any time after May 30, 1974, and. increased the rental rate from $3.42 per sq. ft. under the old lease to $3.90 per sq. ft. under the attempted renewal beginning June 1, 1972. Thus, the renewal option in the original lease was not exercised in accordance with its terms and resulted in a new and different contract, the approval and filing of which by the Comptroller was an essential prerequisite to its *615 validity as a contract binding upon the State. This holds true whether the August 26 letter constitutes a contract as claimant contends, or is nothing more than an agreement to agree as the State contends.
In Blatt Bowling & Billiard Corp. v. State of New York (14 A D 2d 144, 145-146) Presiding Justice Bergan, in discussing section 112 of the State Finance Law, stated: “ The provisions of section 112 of the State Finance Law (as it read in 1957) were that before ‘ any contractf for more than $500 made for or by any State officer ‘ shall be executed or become effective ’ it ‘ shall first be approved by the comptroller and filed in his office ’. (L. 1941, ch. 523.) It is undisputed that this filing and approval were not had in this instance; and whatever may have been the personal views of the Comptroller or his assistants on the effect of this statute on payments from special funds, such as the Community Store Fund, or the need for prior approval and filing, it seems clear from the terms of this statute that the requirement for this prior approval necessarily existed; could not be avoided; and guards the State from liability. It sweeps in 1 any contract ’ made by a State ‘ officer ’ for over $500.”
Claimant argues that SUNY is not subject to the provisions of subdivision 2 of section 112 of the State Finance Law because it has many of the indices of separateness and cites Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v. New York State Thruway Auth. (5 N Y 2d 420) wherein the Court of Appeals held that the provisions of section 135 of the State Finance Law were not applicable to the New York State Thruway Authority because the Authority is not a board or department of the State within the meaning of the statute, but rather is a public corporation having a separate and independent existence. The difficulty with this contention is that the Appellate Division of the Supreme Court of the State of New York, Third Department, has already held that the State University of New York is an integral part of the State Government (State Univ. of N. Y. v. Syracuse Univ., 285 App. Div. 59). In that case writing for a unanimous court Justice Bergan said (p. 61): “ The State University is an integral part of the government of the State and when it is sued the State is the real party.”
Further, were claimant correct in this contention it should have commenced this action not in the Court of Claims but rather in the Supreme Court. Claimant herein has named the State University of New York as respondent meaning defend *616 ant, and in this decision wu consider SUNY and the State of New York as being the same and that the State of New York is'the real party in interest as defendant. Claimant contends that since SUNY never submitted the proposed contract to the Comptroller for his approval, in some way equity can step in to protect claimant because every contract implies good faith and fair dealing. This may be true when you are dealing with two individuals or corporations neither of which requires any approval of a contract, lease or agreement other than that of its corporate officers having authority. Here, however, the Comptroller must approve this lease under the provisions of subdivision 2 of section 112 of the State Finance Law. There is nothing in the provisions of that section which would have prevented officers of Westgate North, Inc. from submitting the letter agreement to the Comptroller for his approval though the court readily concedes that the Comptroller would probably have taken the matter up with the officials of SUNY. Westgate may have brought legal proceedings against SUNY to require it to submit Exhibit B, or á formal lease based thereon, to the Comptroller for his approval or there may have been some personal fault by an officer of SUNY (Belmar Contr. Co. v. State of New York, 233 N. Y. 189, 195). Thus this argument avails nothing to claimant especially in the Court of Claims which does not possess equity jurisdiction.
The court is of the opinion that the cases of Drislane v. State of New York (10 MisC 2d 105, affd. 7 A D 2d 141) and Adson Inds. v. State of New Yort (51 Misc 2d 718, mod. 28 A D 2d 1183) are distinguishable in that each involved the operation of the so-called “ executory clause ” in a lease which had been duly executed by all necessary parties. In our case, it is admitted that the Comptroller never approved Exhibit B and filed it in his office. Thus there was not, and could not be, an enforceable contract against the State (Blatt Bowling & Billiard Corp. v. State of New York, 14 A D 2d 144).
We decide therefore that defendant’s motion to dismiss the claim herein should be, and hereby is, granted as to the second cause of action only and should be, and hereby is, denied as to the first cause of action.
Let judgment for claimant be entered on the first cause of action and this order on behalf of defendant be entered on the second cause of action in accordance with this decision.