JOSHUA A. BECKER, M. D. & ASSOCIATES, P. C., Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 59429.)

Third Department, December 7, 1978

### APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (George M. Thorpe and Ruth Kessler Toch of counsel),* for appellant-respondent.

*Van Voorhis & Van Voorhis (John Van Voorhis of counsel),* for respondent-appellant.

### OPINION OF THE COURT

*Per Curiam.*

Claimant filed this claim in the Court of Claims to recover for the value of physician's services rendered during the calendar year 1974 to patients of the Downstate Medical Center (Downstate), Brooklyn, New York, pursuant to an agreement between claimant and the State University of New York (SUNY).

For a number of years, it has been the practice of Downstate to employ physicians to serve as faculty members while also permitting them to practice privately as long as it did not interfere with their teaching responsibilities. In 1969, SUNY, on behalf of Downstate and a partnership of certain of Downstate's faculty-doctors known as the Downstate Medical Group (Group), entered into an agreement whereby the members of the Group would bill their private patients directly for services rendered and Downstate would bill hospital patients directly and all fees received for services rendered by members of the Group would be split between the Group and the hospital according to certain percentage applications. The agreement was reduced to writing but was never signed by SUNY or by or on behalf of the Group and its doctors.

On or about December 31, 1970, the physicians comprising the department of radiology formed the corporation which is the claimant herein. The corporation and/or its members thereafter rendered services in the hospital, and until April, 1971, the claimant received from the State a percentage of fees, as provided in the unsigned 1969 agreement between SUNY and the Group. In 1971, the Comptroller of the State of New York refused to honor any vouchers for payments to the claimant based upon the 1969 agreement upon the ground that formal approval as required by section 112 of the State Finance Law had not been given. The claimant *nevertheless* continued to render services, and SUNY permitted the relationship to continue after the Comptroller's refusal.

The claimant previously filed a claim for its percentage of fees for services rendered from April 1, 1971 to December 31, 1973. That claim was compromised before trial by a settlement based upon the percentages stated in the 1969 agreement. The State, consistent with that settlement, has refused to pay any sums of money for services rendered subsequent to December 31, 1973, and, accordingly, this claim was filed in

1975 to recover for services rendered during the calendar year 1974.

The central issues in this case involve the agreement entered into in 1969 between SUNY and the Group. The record establishes that the claimant was not a party to that agreement, but both SUNY and the claimant have attempted to adopt it as a contract between them and/or as legally representing the relationship between them.

It is undisputed upon this appeal that section 112 of the State Finance Law is applicable to the 1969 agreement and/or the relationship between the parties herein as a matter of contract. The finding by the trial court that the contract has never been approved by the Comptroller is supported by the record and precludes a recovery based on contract (see *Blatt Bowling & Billiard Corp. v State of New York,* 14 AD2d 144).

Further, as found by the trial court, the claimant was not induced to render any services or confer any benefits upon the State by any misrepresentation by the State. Specifically, the court noted: "Quite the contrary, as early as April, 1971 the claimant knew there was a contract problem; yet it continued to work". That the claimant did thereafter secure payment through December, 1973, does not erase the continuing knowledge of the Comptroller's refusal to approve any alleged existing contract.

In the present case, the trial court invoked equitable considerations to require the State to pay the claimant for services rendered. The trial court had no such equitable jurisdiction *(Psaty v Duryea,* 306 NY 413; *Westgate North v State Univ. of N. Y.,* 77 Misc 2d 611, 616, affd 47 AD2d 1004). To consider the instant relief as being merely incidental would not be realistic and would exceed the reference thereto in the *Psaty* case *(Psaty v Duryea, supra,* pp 416-417).

Furthermore, assuming that the trial court is correct in its legalistic formulation of a duty on the part of the State to pay moneys representing the services rendered to *someone,* such a consideration does not weigh in favor of the claimant.

The claimant proceeded while knowing that it was a violation of section 112 of the State Finance Law for either it or SUNY to be in performance of a contract not approved by the Comptroller. Assuming that by virtue of having conferred a benefit on the State of New York an "innocent" supplier may claim an estoppel of the right of the citizens of the State to insist on satisfaction of their constitutional and/or statutory

protection *(Gerzof v Sweeney,* 22 NY2d 297) the claimant herein was not "innocent". In any event, the estoppel in *Gerzof* is a shield, and to apply it to this case would convert it into a sword, i.e., in *Gerzof* the village had performed its duties (payment) and the issue was the right of the village to recover its payment, whereas in this case the State has not performed, and the estoppel would be used to require performance.

There is no merit to any suggestion of equities favoring the claimant in this action and, as hereinbefore observed, the equitable relief granted by the trial court is not within its jurisdiction (see *Westgate North v State Univ. of N. Y., supra).* (See, also, *Westgate North v Boyer,* 47 AD2d 970.) Since the claim must be dismissed, the contention of the claimant that the trial court erred by denying interest need not be considered.

The judgment should be reversed, on the law and the facts, without costs, and the claim dismissed without prejudice to any further proceeding the claimant may institute, if so advised.

MIKOLL, J. (dissenting). I respectfully dissent.

Downstate Medical Center (Downstate) employed physicians to serve as faculty members on a part-time basis and permitted them to practice independently when not teaching. Claimant sued the State University of New York (SUNY) for services rendered in 1974 pursuant to a contract entered into in 1969 between SUNY on behalf of Downstate and the Downstate Medical Group (Group) which was a partnership consisting of members of the departments of pathology, radiology, rehabilitation and medicine. The Group had operated under this contract, which was executed by the parties and approved by the Comptroller, until December 31, 1969. Thereafter, Dr. Becker, a member of the Group, and the other physicians in the department of radiology at Downstate formed a professional corporation, Joshua A. Becker, M. D. & Associates, P. C. (Corporation), but no new contract was executed by the Corporation and SUNY. The Corporation took over and discharged all the duties formerly fulfilled by those members of the Group who had been members of the department of radiology under the same terms as were contained in the 1969 agreement. The Corporation was paid without a new written contract, for three months from January to April of 1971. Thereafter, the Comptroller refused to honor vouchers

submitted by the Corporation for professional services on the ground that formal approval of the existing arrangement by the Comptroller was required pursuant to section 112 of the State Finance Law and had not been given. Nevertheless, the Corporation continued to provide the services.

The trial court found that the Corporation could not recover under the theory of express contract because the Corporation had not succeeded to the rights of the Group and there was no written agreement entered into between the Corporation and SUNY approved by the Comptroller for the year 1974. Recovery was also found to be barred under the theory of implied contract since the Corporation's and Downstate's understanding to continue under the same terms as were contained in the 1969 agreement was never approved by the Comptroller's office as required by section 112 of the State Finance Law. The Court of Claims rejected the Corporation's other legal arguments based on subrogation, ratification, restitution, agency and estoppel but granted claimant judgment of $256,550.33 without interest prior to date of entry of judgment by applying its powers of equity incidental to its determination of the Corporation's claim for a money judgment.

The State contends that the Court of Claims was without power to grant judgment to the Corporation because it is not entrusted with general equity jurisdiction. While we accept this proposition as correct, it is equally true that in determining claims for money damages against the State, the Court of Claims may grant incidental equitable relief (*Gerzof v Sweeney*, 22 NY2d 297). In *Gerzof* the Court of Appeals created an exception to the general rule that where work is done pursuant to an illegal contract, no recovery may be had by the vendor, either on the contract or in *quantum meruit*. In declining to impose the harsh remedy of forfeiture in *Gerzof* the court concluded that to deny recovery to the claimant would be so disproportionate a penalty for the failure to obtain the Comptroller's approval as to "offend conscience". The record supports the conclusion of the Court of Claims that the Corporation was encouraged to continue providing services by Downstate and the Comptroller's failure to halt the anomalous situation that existed. There is no question that the services were rendered, nor is there a question as to their value. The equitable relief fashioned by the court was appropriate and within the ambit of its powers. I also find no merit in claimant's contention that the court's denial of interest on

the award prior to the entry of judgment constituted an abuse of discretion under CPLR 5001 (subd [a]). The particular facts of this case must be considered. The court found fault with claimant's conduct and the consequent denial of interest was a proper exercise of its discretion (see *Spadanuta v Incorporated Vil. of Rockville Centre,* 20 AD2d 799).

The judgment should be affirmed.

SWEENEY, J. P., KANE, STALEY, JR., and HERLIHY, JJ., concur in *Per Curiam* opinion; MIKOLL, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law and the facts, without costs, and claim dismissed without prejudice to any further proceeding the claimant may institute, if so advised.