OPINION OF THE COURT
Albert A. Blinder, J.
THE MOTIONS BEFORE THE COURT
Movant moves by Motion M-23090 for permission to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act. The proposed claim seeks $256,550.38 with interest from January 1, 1975 and is premised solely on the legal theory of recovery for money had and received which accrued after September 1, 1974.
Motion M-23222 relates to Claim No. 60434, which was an amended claim filed on June 20, 1979 (pursuant to an order of Amann, J., filed on June 14, 1979) and sought the recovery of $2,054,349.95. The claim states that it is for damages arising out of a failure of the State of New York to pay claimant for services which were furnished from January 1, 1975 through December 31, 1978. By Motion M-23222 claimant seeks further to amend Claim No. 60434 to eliminate that portion of it sounding in expressed or implied contract and to substitute exclusively as the theory of recovery the following, "[t]his claim is for money had and received by the State of New York which it collected illegally and without authority from inpatients and inpatients’ third party carriers”. The period in which the services were rendered by claimant is from January 1, 1975 through December 31, 1979.
The State of New York has cross-moved for judgment dismissing Claim No. 60434 pursuant to CPLR 3211 (subd [a], pars 5, 7) on the doctrines of res judicata and collateral *590 estoppel "and for an order denying Motion M-23090” which seeks permission to file a late claim.
HISTORY OF THE CLAIM
This is a complex matter. The facts have been previously discussed in detail in the decision of Honorable Henry W. Lengyel, which was filed on April 4, 1977. A brief discussion of these are, however, necessary fully to comprehend the legal issues involved. The following succinct statement of fact appears in the decision of the Third Department, which reviewed Judge Lengyel’s decision:
"In 1969, SUNY [State University of New York], on behalf of Downstate [Downstate Medical Center] and a partnership of certain of Downstate’s faculty-doctors known as the Downstate Medical Group (Group), entered into an agreement whereby the members of the Group would bill their private patients directly for services rendered and Downstate would bill hospital patients directly and all fees received for services rendered by members of the Group would be split between the Group and the hospital according to certain percentage applications. The agreement was reduced to writing but was never signed by SUNY or by or on behalf of the Group and its doctors.”
"On or about December 31, 1970, the physicians comprising the department of radiology formed the corporation which is the claimant herein. The corporation and/or its members thereafter rendered services in the hospital, and until April, 1971, the claimant received from the State a percentage of fees, as provided in the unsigned 1969 agreement between SUNY and the Group. In 1971* the Comptroller of the State of New York refused to honor any vouchers for payments to the claimant based upon the 1969 agreement upon the ground that formal approval as required by section 112 of the State Finance Law had not been given. The claimant nevertheless continued to render services, and SUNY permitted the relationship to continue after the Comptroller’s refusal.” (Becker & Assoc. v State of New York, 65 AD2d 65, 66.)
The Appellate Division agreed with the trial court’s finding that the claimant was not induced to render any services or confer any benfits upon the State by any misrepresentation. It also stated that it was undisputed that section 112 of the State Finance Law was applicable to the 1969 agreement and the relationship between the parties, as a matter of contract. It further confirmed the trial court’s finding that the contract *591 was never approved by the Comptroller, which precluded a recovery based on contract, citing Blatt Bowling & Billiard Corp. v State of New York (14 AD2d 144) and Becker & Assoc. v State of New York (65 AD2d 65, 67, supra).
Judge Lengyel, however, made an award to the claimant based on services rendered by invoking equitable considerations. The Appellate Division reversed the award stating: "The trial court had no such equitable jurisdiction (Psaty v Duryea, 306 NY 413; Westgate North v State Univ. of N. Y., 77 Misc 2d 611, 616, affd 47 AD2d 1004). To consider the instant relief as being merely incidental would not be realistic and would exceed the reference thereto in the Psaty case (Psaty v Duryea, supra, pp 416-417).” (Becker & Assoc. v State of New York, 65 AD2d 65, 67, supra.) The Appellate Division further stated (p 68): "There is no merit to any suggestion of equities favoring the claimant in this action and, as hereinbefore observed, the equitable relief granted by the trial court is not within its jurisdiction”.
Upon appeal to the Court of Appeals, the decision reversing the award was affirmed by a short memorandum which reads as follows: "The order appealed from should be affirmed, with costs. Insofar as appellant seeks to recover on a theory of money had and received, no claim therefor was properly asserted. We would note that we do not construe the decision in the Court of Claims as holding that the agreement allegedly entered into between the Downstate Medical Group and the State University of New York in 1969 was not approved by the State Comptroller. Rather, the court held that no agreement between appellant and the State University has been approved by the Comptroller (see State Finance Law, § 112).” (Becker & Assoc. v State of New York, 48 NY2d 867, 868-869.)
THE CONTENTIONS OF THE PARTIES
Claimant’s able counsel contends with respect to both of the motions presented to this court that the Court of Appeals decision was not intended finally to dispose of all rights of this professional corporation and its members to recover for those otherwise unpaid professional services. It is asserted that the Appellate Division’s decision which denied the right to recover on the 1969 agreement should be interpreted as also invalidating that portion of the contract between the claimant professional corporation and the State University which authorized *592 the State University to collect the professional component of the fees for the radiological services rendered. It should, therefore, be construed by this court as a holding that the State had no right to collect the moneys which do not belong to it but rather to the claimant corporation.[1]
Claimant also states that 'the reversal of the Appellate Division and the dismissal of the claim was "without prejudice to any further proceeding the claimant may institute, if so advised.” (Becker & Assoc. v State of New York, 65 AD2d 65, 68, supra.)
In opposition, the defendant’s able counsel states that by the full litigation of Claim No. 59429, the trial court was "tendered a testimonial and evidentiary panoply of fact and law which manifestly enabled it to define exhaustively the issues involved and painstakingly to rationalize its conclusions”. He submits that no fragment of the claimant’s action was left unburnished.
Defendant’s counsel continues to state his position, as follows: "The claimant now, in! effect, seeks to relitigate the precise issues which have consumed the confined [sic] efforts of no less than twelve judges (and now the thirteenth) to resolve. In what is simply an exercise in casuistry, the claimant now moves to achieve redress by demonstrating to the nisi prius Court that which has already abundently [sic] been made clear — that the claimant corporation performed services for which it was not, and cannot ¡be recompensed. In this exaltation of form over substance the claimant merely reiterates the precise facts which it urged before albeit in a different time frame, but, mirabile dictu, these facts are now transcendentally endowed with validity because their label has been deleted and new catchwords have been affixed: 'Moneys had and received.’ ” I
THE LAW
Claimant has contended that the roots of its proposed claim and those of the requested amendment of its previously filed claim are based in quasi contract for money had and received. The law of quasi contract is employed by courts on the *593 assumption that unless there was such intervention, one party would be unjustly enriched or benefited at the expense of another. In such cases a contract is implied by law, as though it had been executed or, otherwise, consummated, when, in fact, it had not been. (Cf. Williams v State of New York, 175 Misc 972.) The cases cited by claimant are authorities for this proposition. (See Lindlots Realty Corp. v County of Suffolk, 278 NY 45; Miller v Schloss, 218 NY 400; People ex rel. Dusenbury v Speir, 77 NY 144.)
As was stated in Miller v Schloss (supra, at p 407): "A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bona belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.”[2]
Claimant has directed the court’s attention to the Lindlots Realty Corp. case and asserts that the decision is particularly applicable to the case at bar. In that case the Court of Appeals stated (278 NY 45, 53, supra): "A governmental body cannot repudiate the act of the official and retain the money received as a result of the act. Although, as noted, no one may acquire property from a county through an unauthorized act of its officials, yet here the shoe is on the other foot, and the county *594 is seeking to retain moneys acquired through misrepresentations. A municipality, no more than an individual, may not enrich itself through misrepresentations, authorized or unauthorized.”
Claimant argues that the Comptroller’s refusal to approve the contract with the claimant was a veto unilaterally imposed. Claimant has previously addressed itself to this argument and, in fact, Judge Lengyel held in his decision that "although the equities lie with the claimant, the courts have interpreted State Finance Law § 112 as applicable even to causes of action in quasi contract. Belmar Contracting Co. v. State of New York, 233 N. Y. 189, 194.” (Becker & Assoc. v State of New York, [Claim No. 59429, filed April 4, 1977], supra, p 12.)
Judge Lengyel stated in his decision that the claimant presented a variety of rationales to circumvent the effect of section 112 of the State Finance Law. Each of these various theories was discussed in his decision.[3]
Claimant argues that section 112 of the State Finance Law is not a bar in actions for money had and received and is evident by the numerous decisions in which taxes collected illegally have been held to be recoverable in actions for money had and received. Although there may be a basis for making that contention, our examination of those decisions does not substantiate their use unless this case was based upon the invalidity of a statute or governmental determination. Initially, all of the cases involved Supreme Court actions. Secondly, most dealt with payment of taxes by mistake. The mistake may have been by the' individual paying, who believed that the taxes were his or by the governmental agency in believing that the taxes applied. (See Betz v City of New York, 119 App Div 91, affd 193 NY 625; also, see, Paramount Film Distr. Corp. v State of New York, 30 NY2d 415, remittitur 31 NY2d 678.) j
The issue is can the claimant now proceed on the theory of money had and received by seeking permission to file a late claim and by moving to amend Claim No. 60434.
The defendant has cross-moved to dismiss Claim No. 60434 *595 based on the prior proceedings which have already been determined by the Court of Appeals. Based on the prior decisions, Claim No. 60434 as it now stands should not proceed further.
May claimant now amend that claim to include a theory which it submits is proper and which it further submits was reserved to it by the Appellate Division and by the Court of Appeals? This must be answered in the negative. The issues presented have been fully explored and litigated. This court may not further pursue the matter.
Even if this court would contemplate the exercise of its discretion under subdivision 6 of section 10 of the Court of Claims Act, it must first consider whether a reasonable excuse has been submitted such as one which would render the matter suitable for the granting of discretionary relief.
 Such consideration would cause the court to conclude that no reasonable excuse has been submitted other than the peculiar history of the claim. Claimant proposes to advance its claim on a narrow theory of quasi contract entitled "money had and received”. Claimant contends that this theory was never before advanced. Even if claimant, however, did not plead this particular cause, no explanation was given why it could not have been when it filed its original claim. One must question whether the failure of an attorney properly to plead a particular cause of action is a reasonable excuse for seeking permission to file a late claim, even if the theory of recovery is novel. Certainly, numerous decisions have held that attorneys’ inadvertence is not a valid excuse for permitting the filing of a late claim. (See, e.g., Almedia v State of New York, 70 AD2d 712; Block v New York State Thruway Auth., 69 AD2d 930; 500 Eighth Ave. Assoc. v State of New York, 30 AD2d 1010; Sessa v State of New York, 88 Misc 2d 454, 459-460.) Furthermore, the proposed claim seeks recovery for professional services rendered to claimant’s patients from January 1, 1974 through December 31, 1974 in which moneys were paid to the State by inpatients as third-party payers by installments over a period commencing not earlier than January 15, 1974. It is submitted in the claim that the amount due claimant could not be resolved prior to December 31, 1974. It is therefore questionable whether this claim could be brought back from the point beyond judicial recall because of the passing of time. Subdivision 4 of section 10 of the Court of Claims Act provides for a two-year time period to seek recovery for a claim for *596 breach of contract and any other claim not provided by section 10. While it is true that subdivision 6 of section 10 states that the time limit for filing the claim may be at any time before an action asserting a like claim against a citizen of the State would be barred under the provisions of CPLR article 2, that time period would also have appeared to have expired. Subdivision 6 of section 10 of the Court of Claims Act may not be used retroactively to revitalize a claim otherwise barred by the passing of time. (See Sessa v State of New York, 88 Misc 2d 454, affd 63 AD2d 334, affd 47 NY2d 976, supra.) However, it is this court’s opinion that the court may not even consider the exercise of its discretion since, in our opinion, the matter has been fully decided and previously determined.[4]
There is no question that the identity of the parties herein is the same as in the previous litigation. Furthermore, it is the court’s finding that the proposed claim has been submitted by movant, argued by his attorneys and considered by Judge Lengyel. Certainly, the same arguments were made there as were made in this motion. The fact that the Appellate Division did not choose to concur on the theory submitted does not enable claimant to now relitigate the facts de nova. Even if such were not the case, as this court has previously stated, a judgment entered in one action is conclusive in later actions, not only as to matters actually litigated therein but also as to any that might have been so litigated. (Barrett v *597 State of New York, 85 Misc 2d 456; see, also, Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304.)
The dismissal of the claim heretofore filed by claimant was res judicata not only as to the specific points of the law involved in the appeal but also as to the various causes of action asserted in the original claim which were directly ruled upon by the decision from which the appeal was taken. (See Whitree v State of New York, 56 Misc 2d 693.) There are numerous decisions which hold to the effect that even if the equitable action sought to be asserted was not dealt with by the previous decision, it would be barred by res judicata if it could have been litigated in the previous legal action. (Cauldwell-Wingate Co. v City of New York, 252 App Div 559, affd 278 NY 477.) There can be no question that the measure of identity in the suit proposed is identical to the first claim and to grant the relief requested would destroy the interest established by the first dismissal. (See Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 306-307, supra.)
Even if the court would be disposed to consider the application, there is a question as to whether this court has the requisite jurisdiction.
An action based on the legal theory of recovery for "money had and received”[5] is a claim which finds its genesis in equity. It is a fiction the law employs as a foundation for a suit when there is an obligation to return moneys received under a mistake of fact.
The Court of Claims may well lack jurisdiction of a claim premised on "money had and received”. It may be argued that the Appellate Division, Third Department, in Forest-Fehlhaber v State of New York (74 AD2d 272, 275) had held that "such an action has been deemed an action at law” and therefore maintainable in the Court of Claims. The holding, *598 however, must be construed only to cover counterclaims that are equitable in nature based on subdivision 3 of section 9 of the Court of Claims Act granting the power "[t]o hear and determine any claim in favor of the state against the claimant” (emphasis supplied). It may also be argued that the dictum expressed in the footnote appended to Alonzo Inc. v State of New York (73 AD2d 760, 761) is dispositive of this matter since it apparently construes the statutory meaning of "implied contract”. It does not, however, indicate that the remedy exists as against the ¡ stricture of section 112 of the State Finance Law. j
The court’s jurisdiction to determine claims involving the State has been fixed by the Constitution and statute. (NY Const, art VI, § 9; Court of Claims Act, §§ 8, 9; Psaty v Duryea, 306 NY 413; Becker & Assoc. v State of New York, 65 AD2d 65, 67, supra; Matter of Silverman v Comptroller of State of N. Y., 40 AD2d 225, 227; Westgate North v State Univ. of N. Y., 77 Misc 2d 611, 616, affd 47 AD2d 1004; Pryles v State of New York, 86 Misc 2d 205, 208-209.) However, at this time in view of the foregoing there is no reason for this court to make a determination that such jurisdiction indeed exists in this court.
There is no doubt in this court’s mind that the equities are in favor of the claimant. A moire unfair and arbitrary attitude adopted by the State on these! facts is difficult to conceive. It appears to this court to present an appropriate area for consideration by the Legislature for a special enabling act. This court, however, may not exceed its powers.
Based on all of the foregoing reasons, the court denies claimant’s motion to file a late claim and further grants defendant’s motion to dismiss Claim No. 60434 and the claim is dismissed.

. This theory was advanced by the claimant in the Court of Appeals when it argued that the claimant was entitled to recover the moneys from the State, not upon the basis of any contract between them, expressed or implied in fact, but on the basis of quasi contract for money had and received.

. The theory has been used to recover funds from a man who had ample funds but who described himself as a pauper to obtain free accommodations at a charitable institution (Old Men’s Home v Lee’s Estate, 4 So 2d 235 [Miss]); to enable individuals to recover taxes paid on property when they erroneously believed they were the owners (Lesster v Mayor, 33 App Div 350); to secure the reasonable value of necessaries delivered to infants (Sceva v Thrue, 53 NH 627); and to recover fees for medical services rendered to unconscious persons incapable of assenting to an express contract (Cotnam v Wisdom, 83 Ark 601; Edson v Hammond, 142 App Div 693). It is a means by which sureties and guarantors can recover from their principals moneys paid out on their behalf to third parties. (Morgan v Smith, 70 NY 537.) It has been utilized to recover money paid upon a forged note believing that it was a loan. (Hathaway v County of Delaware, 185 NY 368.) It has been utilized to recover payment for a tax which should not have been levied. (Betz v City of New York, 119 App Div 91, affd 193 NY 625; cf. 13 Williston, Contracts [3d ed], § 1575 et seq.; also cf. Restatement In the Courts [1965], Restitution, § 44 et seq.)

. Claimant has conceded this, as is evident in claimant’s brief in the Court of Appeals, wherein it stated: “This language perfectly fits the present situation, as Judge Lengyel conceived it, and evidently would have held explicitly if he had not been of opinion that all types of action fcir money had and received against the State are subject to § 112 of the State Finance Law.”

. Judge Lengyel, in his learned decision, stated: "The claimant presented a variety of rationales to circumvent the effect of § 112. Initially, it argued that the moneys received from third party payors and from patients were not funds of the State, and therefore were not subject to the provisions of the State Finance Law. Arguably, although not certainly, such a conclusion might be drawn if there was some restriction on disposition of these moneys which removed them from the operation of the State Finance Law. (Cf., Matter of Blaikie, 11 A D 2d 196, resettled 11 A D 2d 982.) However, as conceded by claimant’s counsel, if these moneys were funds of the State University, they were subject to the State Finance Law provisions. Westgate North v. State University of New York, 77 Misc 2d 611, supra. This is true even though the amounts are to be paid out of a special fund under control of State Officers and not having an appropriation by the Legislature as its source. Blatt Bowling & Billiard Corp. v. State of New York, 14 A D 2d 144. Claimant argued that the asserted contract between the claimant and the State should be regarded as having been made for the benefit of a third party, thereby somehow implying that the moneys received were not funds of the State. However, it is the obligations between the parties to that 'contract’ that are at issue here. An unspecified right of a third party, supposedly arising out of the 'contract’ between the claimant and the State University, cannot affect the rights and obligations of the parties to that 'contract’ with respect to each other.” (Becker v State of New York [Claim No. 59429, filed April 4, 1977], supra, pp 12-13.)

. "In pleading, the technical designation of a form of declaration in assumpsit, wherein the plaintiff declares that the defendant had and received certain money, etc.” (Black’s Law Dictionary [4th ed rev], p 1157.)
"A third species of implied assumpsits is when one has had and received money belonging to another, without any valuable consideration given on the receiver’s part: for the law construes this to be money had and received for the use of the owner only; and implies that the person so receiving promised and undertook to account for it to the true proprietor.” (Ehrlich’s Blackstone, p 546.)
Money had and received was well defined by Lord Mansfield in an early case: "If the defendant be under an obligation, from the ties of natural justice, to refund; the Law implies a debt, and gives this action, founded in the equity of the plaintiffs case, as it were upon a contract" (Moses v Macferlan, 2 Burr 1005, 1008).