OPINION OF THE COURT
Albert A. Blinder, J.
This is a claim for breach of contract predicated on an alleged agreement between claimant and the State University of New York, Downstate Medical Center (Downstate).
From 1967 until December 1, 1980, claimant was the Executive Director of Hillcrest General Hospital. In 1974, when Group Health Incorporated (GHI) took over the operation of Hillcrest, claimant received the additional title and duties of vice-president of GHI. At the time of his resignation from GHI, Mr. Schenker was earning in excess of $54,000 a year, in salary plus fringe benefits.
In the fall of 1980, claimant was recruited by one Jeffrey Weiss, a member of a search committee seeking candidates for the position of acting executive director at Downstate. Mr. Weiss *1039 was the representative of Dr. Stanley L. Lee, the acting president of Downstate.
During meetings with Mr. Weiss and Dr. Lee, claimant discussed his salary requirements and other related topics. These matters included, inter alla, a request for an employment contract of at least a year’s duration containing a provision that if the employment was terminated before the end of that period, severance pay equaling six months’ salary was to be paid to the claimant.
Between October 6 and October 20, 1980, the terms of claimant’s compensation were negotiated. Claimant testified that in his meeting with Dr. Lee on October 17, 1980, the offer of the position as acting director was made and he accepted. Dr. Lee indicated that approval of the chancellor’s office was still to be obtained.
It is clear, however, that Mr. Schenker did not wish to announce his resignation at GHI until he had something in writing. At the alleged direction of Dr. Lee, Mr. Schenker had his attorney draft two agreements, in letter form. Thereafter, on October 20, 1980, Mr. Schenker spoke by telephone to Dr. Lee who informed the claimant that the chancellor’s approval had been obtained. Dr. Lee requested that claimant bring the two draft agreements to Downstate later that day. Mr. Schenker delivered the agreements to Mr. Weiss, who delivered them to Dr. Lee for signature. After the documents were signed and returned to Mr. Schenker, claimant delivered his oral resignation to his supervisor at GHI. A few days later, the draft agreements were retyped on the letterhead of Downstate and resigned by both claimant and Dr. Lee.
Pursuant to the agreements, Mr. Schenker immediately began his consulting work for Downstate which continued until December 1,1980.[1] On that date he assumed the full-time duties as acting executive director. Shortly thereafter, Mr. Schenker received a letter, dated November 21, 1980, from Chancellor Wharton advising claimant that he had been appointed “Acting Hospital Director” at Downstate. Claimant was to sign the letter, to indicate his acceptance of the position, and return it to Dr. Lee. On December 17th claimant signed the letter but not until adding the following typed paragraph at the bottom: “I hereby accept, subject to the terms and conditions of the letter agreement dated October 20, 1980 between Dr. Stanley Lee, Acting President of Downstate Medical Center-State University Hospital.”
*1040 Claimant testified that he then sent the letter back to the chancellor.
Mr. Schenker continued in his position, performing his duties and receiving his salary, until he received a letter, dated January 16, 1981, from Jerome B. Komisar, Vice Chancellor for Faculty and Staff Relations. In the letter, Dr. Komisar indicated that the typed addition to the Chancellor’s letter of November 21,1980 caused the acceptance to be treated as a counteroffer by the claimant, which, in turn, could not be accepted by the University. Thus, the “offer” of the appointment in the November 21, 1980 letter was being withdrawn.
Claimant testified that on January 28, 1981, claimant was advised by Dr. Lee, both orally and in writing that since the offer of the appointment was withdrawn, his salary would cease at the end of the current payroll period.
No termination payments were ever received by Mr. Schenker pursuant to the alleged agreements signed by Dr. Lee and himself on October 20, 1980. After the exhaustion of unemployment insurance benefits, claimant allegedly remained unengaged for a considerable period of time.
It is undisputed that no agreement between claimant and personnel at Downstate was ever forwarded to, approved by or filed in the State Comptroller’s office.
State Finance Law § 112 (2) provides, in relevant part, as follows: “Before any contract made for or by any state department, board, officer, commission, or institution, shall be executed or become effective, whenever such contract exceeds five thousand dollars in amount, it shall first be approved by the comptroller and filed in his office.” (Emphasis supplied.) This section has been held applicable to contracts entered into by the State University of New York. (See, Westgate N. v State Univ., 77 Misc 2d 611, affd 47 AD2d 1004.)
Claimant, initially, argues that the defendant waived the right to assert the State Finance Law since it did not include it as an affirmative defense in its answer. This argument, while compelling at first, fails to find justification in the law. In Belmar Contr. Co. v State of New York (233 NY 189), a similar provision then in existence in the Highway Law § 130 was the subject of the Court of Appeals scrutiny. It held: “Section 130 of the Highway Law (Cons. Laws, ch. 25), clearly provides that the execution of a formal written contract after its approval by the comptroller is essential. This is the basis of the liability of the state. None of its officers may impose upon it a contractual obligation except in the manner prescribed..We may not ignore *1041 the restrictions and limitations with which the legislature has chosen to surround the expenditure of public moneys. They are wise and should be enforced. The state has chosen to enact something similar to the Statute of Frauds for its own protection. Those dealing with it do so knowing this fact and at their own risk. If there is no contract there is no liability. However inequitable the conduct of the state may be it has said that it shall only be responsible upon one condition and consequently the claimant must show that that condition has been complied with.” (Emphasis supplied.)
In the case at bar, we find that compliance with State Finance Law § 112 is a “condition precedent” to the existence of a valid contract and an issue upon which claimant had the burden of proof. (Matter of Konski Engrs. v Levitt, 69 AD2d 940, 941, affd 49 NY2d 850, cert denied 449 US 840.) Thus, the defendant was under no requirement to assert this matter by motion or in its responsive pleading.
Claimant’s alternative argument, that the State Finance Law does not apply to the facts presented, must also fail. While the chancellor has authority to appoint college administrative officers (8 NYCRR 333.5, 333.6) to serve at his pleasure (8 NYCRR 333.8), there is no provision allowing the chancellor or any of his appointees to unilaterally bind the State of New York to contracts of employment, whatever the terms or conditions. State Finance Law § 112 “sweeps in ‘any contract’ made by a State ‘officer’ for over [$5,000].” (Blatt Bowling & Billiard Corp. v State of New York, 14 AD2d 144,146; see also, Becker & Assoc. v State of New York, 65 AD2d 65, affd 48 NY2d 867.)
Finally, counsel for claimant, leaving no stone unturned in her excellent memoranda of law, also argues that the defendant should be equitably estopped from relying on the State Finance Law. Were the doctrine available to this court in an action against the State of New York, we would not hesitate, on the facts presented, to invoke it. While claimant’s counsel cites, as authority, several cases involving a municipality (e.g., Bender v New York City Health & Hosps. Corp., 38 NY2d 662) and an Appellate Division decision on appeal from a judgment in a CPLR article 78 proceeding (Eden v Board of Trustees, 49 AD2d 277), we cannot agree with her position.
In addition to several recent decisions of the Court of Appeals which held that estoppel is unavailable against the State, or a governmental agency acting in a governmental capacity (see, e.g., Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33; Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d *1042 88, 93), we note that the claimant in Eden (supra), was not as successful in this court in her subsequent suit for damages. (See, Eden v State of New York, 103 Misc 2d 461.) It is beyond cavil that this court does not possess jurisdiction over actions seeking equitable relief nor may it invoke equitable considerations. (Psaty v Duryea, 306 NY 413; Matter of Silverman v Comptroller of State of N. Y., 40 AD2d 225; Westgate N. v State Univ., supra; Becker & Assoc. v State of New York, supra.) There is no evidence in the record that claimant sought to invoke the equity powers of the Supreme Court, pursuant to CPLR article 78.
Claimant further maintains that a recent decision of the Appellate Division, Second Department (Parsa v State of New York, 100 AD2d 899), indicates that State Finance Law § 112 will only be applied where the purposes of the statute can be served. In Parsa the court stated: “The purpose of this section is twofold: to prevent the making of contracts for which there is no appropriation and to protect the State from improvident or extravagant contracts (see Deverho Constr. Co. v State of New York, 94 Misc 2d 1053; 1965 Opns Atty Gen 27)” (p 900).
Clearly, the alleged agreement entered into by claimant and Downstate is precisely the type of contractual obligation which was meant to be covered by the requirements of the State Finance Law. Unlike Parsa (supra), the defendant in the instant case did not act as a mere conduit for funds from the Federal Government nor is there evidence in the record which would provide the basis for a cause of action in money had and received.[2]
Although it is clear that claimant was treated with great unfairness by State University officials, there are neither allegations of intentional misrepresentation nor fraud. To the contrary, as noted before, claimant had the benefit of legal counsel when the original proposed agreements were drafted. Ignorantia legis neminem excusat. Unfortunately for claimant, this court is constrained to permit claimant to suffer an obvious inequitable result.
As this court has previously noted: “There is no doubt in this court’s mind that the equities are in favor of the claimant. A more unfair and arbitrary attitude adopted by the State on these facts is difficult to conceive. It appears to this court to present an appropriate area for consideration by the Legislature * * * This court, however, may not exceed its powers.” (Becker & Assoc. v *1043 State of New York, 104 Misc 2d 588, 598, affd 79 AD2d 599, Iv denied 52 NY2d 1030.)
This claim is dismissed.

. Claimant was fully compensated for this period, as consultant.

. The court notes that Parsa {supra) is sub judice before the New York Court of Appeals.